STATE of Wisconsin EX REL. GOOD SAMARITAN MEDICAL CENTER-DEACONESS HOSPITAL CAMPUS and Jose Kanshepolsky, M.D., Petitioners-Relators-Appellants,

WISCONSIN PATIENTS COMPENSATION FUND, Petitioner-Relator,

v.

Dennis P. MORONEY, Attorney-Chairperson; Patients Compensation Panel; John Hardy and Nancy Hardy, Respondents.

Court of Appeals

*No. 84–683. Submitted on briefs December 10, 1984.—Decided February 1, 1985.*
(Also reported in 365 N.W.2d 887.)

For the appellants the cause was submitted on the briefs of *Riordan, Crivello, Carlson, Mentkowski & Henderson,* with *Daniel R. Riordan* and *Nancy J. Meissner* of counsel, of Milwaukee, and *Zirbel, Howard & Malone, S.C.,* of Milwaukee.

For the respondents John and Nancy Hardy the cause was submitted on the briefs of *Kmiec Law Offices,* with *Boyd M. McGranaghan* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

WEDEMEYER, P.J.   John and Nancy Hardy brought a proceeding before the Wisconsin Patients Compensation Panel against the Good Samaritan Medical Center-Deaconess Hospital Campus and Jose Kanshepolsky, M.D. The hospital refused to answer several interrogatories posed by the Hardys, claiming that they called for materials protected under secs. 146.38 and 905.02, Stats., and Wis. Admin. Code, sec. H 24.04(1)(k) and (l). We hold that the interrogatories do not, on their face, request materials and information which fall under the protection of sec. 146.38, but that if the hospital objects

to producing the documents and information, the attorney chairperson of the panel may inspect them to determine whether the materials are privileged. We affirm the order and judgment of the trial court.

The Hardys filed a submission of controversy with the patients compensation panel alleging that Dr. Kanshepolsky was negligent in his treatment of John Hardy. They also alleged that the hospital was negligent in retaining Dr. Kanshepolsky on its staff and according him the operating privileges that it did. *See Johnson v. Misericordia Community Hospital,* 99 Wis. 2d 708, 301 N.W.2d 156 (1981). The Hardys submitted a list of interrogatories to the hospital. The hospital answered all but five of the interrogatories, claiming a privilege with regard to the five.

The attorney chairperson of the panel ordered the hospital to answer three of the interrogatories. He drew a distinction between the records of the credentials committee and the records of peer review committees, concluding that peer review committee material was privileged but that credentials committee material was not. He further ordered that if the hospital refused to provide the materials requested, he would review the materials *in camera* to determine whether they were privileged.

The hospital, Dr. Kanshepolsky, and the Wisconsin Patients Compensation Fund filed a petition in circuit court for an alternative writ of prohibition directing the chairperson and the Hardys to refrain from proceeding. After a hearing, the trial court quashed the writ and affirmed the chairperson's order. The hospital and Dr. Kanshepolsky appeal.

The interrogatories in question are as follows:

*Interrogatory No. 13:*

Once Jose Kanshepolsky, M.D., was admitted to the medical staff, was any additional investigation continued beyond his original admission relative to his renewal or continuation of staff privileges?

*Interrogatory No. 14:*
[P]lease attach hereto all written applications made by Jose Kanshepolsky, M.D., from the time he was admitted to the medical staff of Deaconess Hospital, including all applications for renewal (in effect the entire personnel file or files of Jose Kanshepolsky, M.D.).

*Interrogatory No. 18:*
From the time of his admission to the medical staff of Deaconess Hospital to the present, have Jose Kanshepolsky, M.D.'s medical privileges ever been limited? If so, please state the following:

    a. the date or dates the limitation of staff privileges was in effect;
    . . . .
    c. the nature of the restriction or limitation;
    d. whether Jose Kanshepolsky, M.D. ever took any action to try to lift the limitation or restriction.

The appellants contend that the information sought by these interrogatories is privileged under sec. 146.38, Stats. That section provides in part:

(1) No person who participates in the review or evaluation of the services of health care providers or facilities or charges for such services may disclose any information acquired in connection with such review or evaluation except as provided in sub. (3).

(2) All organizations reviewing or evaluating the services of health care providers shall keep a record of their investigations, inquiries, proceedings and conclusions. No such records may be released to any person under s. 804.10 (4) or otherwise except as provided in sub. (3). No such record may be used in any civil action for personal injuries against the health care provider or facility; however, information, documents or records presented during the review or evaluation may not be construed as immune from discovery under s. 804.10 (4) or use in any civil action merely because they were so presented.

The appellants argue that the information sought constitutes the record of a "review or evaluation of the services" of a health care provider. They argue that sec.

146.38 provides no basis for the distinction drawn by the panel chairperson and by the trial court between the "credentials committee" and a "peer review committee."

Decisions as to whether a physician on a hospital staff should be reappointed to the staff, and what the physician's privileges are to be, are made by the hospital's governing body. Wis. Admin. Code, secs. H 24.02(1) (e), H 24.04(1) (d), and H 24.04(1) (e).[1] It is unclear

[1] Wis. Admin. Code, sec. H 24.02(1) (e) provides in part:

(e) The governing body shall appoint members of the medical staff.

. . . .

2. The procedure related to the submission and processing of applications shall involve the administrator, credentials committee of the medical staff or its counterpart, and the governing body, all functioning on a regular basis.

3. Selection of physicians and definition of their medical privileges, both for new appointments and reappointments, shall be based on written, defined criteria.

4. Action taken on applications for medical staff appointments by the governing body shall be in writing and retained.

Wis. Admin. Code, sec. H 24.04(1) (d) provides in part:

(d) Staff appointments shall be made by the governing body, taking into account recommendations made by the active staff.

1. The governing body shall have the legal right to appoint the medical staff and the moral obligation to appoint only those physicians who are judged by their fellows to be of good character and qualified and competent in their respective fields.

2. Reappointments shall be made periodically, and recorded in the minutes of the governing body. Reappointment policies provide for a periodic appraisal of each member of the staff . . . . Recommendations for such reappointments are noted either in the credential committee or medical staff meetings' minutes.

Wis. Admin. Code, sec. H 24.04(1) (e) provides in part:

(e) Members of the staff shall be qualified legally, professionally, and ethically for the positions to which they are appointed.

1. To select its members and delineate privileges, the hospital medical staff shall have a system, based on definite workable standards, to evaluate each applicant by its credentials committee . . . which makes recommendations to the medical staff and to the governing body.

whether the phrase, "organizations reviewing or evaluating the services of health care providers," as used in sec. 146.38, Stats., includes the governing body, or whether it refers only to those bodies which may be described as "peer review committees." *See, e.g.*, sec. H 24.04(1)(m), (n), and (o) (hospital's medical records committee, tissue committee, and medical staff specifically required to review and evaluate quality of medical care given patients).[2] We conclude that the statute is ambiguous and

2. Privileges shall be extended to duly licensed qualified physicians to practice in the appropriate fields of general practice, internal medicine, surgery, pediatrics, obstetrics, gynecology, and other recognized and accepted fields according to individual qualifications.

[2] Wis. Admin. Code, sec. H 24.04(1)(m) provides in part:

(m) The medical records committee . . . shall supervise the maintenance of medical records at the required standard of completeness. On the basis of documented evidence, the committee also shall review and evaluate the quality of medical care given the patient.

. . . .

5. The quality of patient care shall be evaluated from the documentation on the chart. In some hospitals, this function may be given to an "audit" or "evaluation" committee.

Wis. Admin. Code, sec. H 24.04(1)(n) provides in part:

(n) The tissue committee . . . shall review and evaluate all surgery performed in the hospital on the basis of agreement or disagreement among the preoperative, postoperative, and pathological diagnoses, and on the acceptability of the procedure undertaken.

. . . .

2. This committee's work shall include continuing education through such mechanisms as utilization of its findings in the form of hypothetical cases and/or review of cases by category at staff meetings and/or publishing in coded form physicians' standings in the hospital regarding percentage of cases in which normal tissue is removed.

Wis. Admin. Code, sec. H 24.04(1)(o) provides in part:

(o) Meetings of the medical staff shall be held to review, analyze, and evaluate the clinical work of its members. . . . The

that we may look outside the language of the statute for aid in determining its meaning. *See Kollasch v. Adamany,* 104 Wis. 2d 552, 563, 313 N.W.2d 47, 52–53 (1981).

Sections 146.37 and 146.38, Stats., were both created by ch. 187, Laws of 1975. Both sections relate to the evaluation of the services of health care providers. We therefore will consider the language of sec. 146.37 in our construction of sec. 146.38. *See id.* at 563, 313 N.W.2d at 53.

Section 146.37(1), Stats., contains an elaboration on the phrase "review or evaluation of the services of health care providers" which is not found in sec. 146.38(1) or (2). Section 146.37(1) provides in part:

No person acting in good faith who participates in the review or evaluation of the services of health care providers or facilities or the charges for such services *conducted in connection with any program organized and operated to help improve the quality of health care, to avoid improper utilization of the services of health care providers or facilities or to determine the reasonable charges for such facilities* . . . is liable for any civil damages as a result of any act or omission by such person

---

method adopted to insure adequate evaluation of clinical practice in the hospital shall be determined by the medical staff and clearly stated in the bylaws.

. . . .

2. Staff and departmental meetings shall be held for the purpose of reviewing the medical care of patients within the hospital and those recently discharged.

3. Minutes of such meetings shall give evidence of the following:

a. A review of the clinical work done by the staff on at least a monthly basis; this shall include consideration of selected deaths, unimproved cases, infections, complications, errors in diagnosis, results of treatment, and review of transfusions.

b. Consideration of the hospital statistical report on admissions, discharge, clinical classifications of patients, autopsy rates, hospital infections, and other pertinent hospital statistics.

in the course of such review or evaluation. [Emphasis added.]

Similar language is used in sec. 146.38(3). We conclude that because secs. 146.37 and 146.38 were created at the same time and relate to the same subject matter, the phrase "reviewing or evaluating the services of health care providers" as used in sec. 146.38(2) should be read as though it were followed by the modification present in sec. 146.37(1). In resolving the issues on appeal, we therefore will consider whether the interrogatories seek the record of a health care review program organized and operated to help improve the quality of health care.

We will consider each of the interrogatories in turn. Interrogatory 13 asks whether any investigation was done after Dr. Kanshepolsky was appointed to the hospital staff regarding the continuation or renewal of his staff privileges. This question calls only for a "yes" or "no" answer. It does not request the record or conclusions of any reviewing body and thus does not come within the privilege of sec. 146.38, Stats.

Interrogatory 14 asks for all written applications Dr. Kanshepolsky made since his initial appointment to the hospital staff, including applications for reappointment to the staff. Applications for reappointment are reviewed by the credentials committee, which then makes recommendations to the governing body, Wis. Admin. Code, sec. H 24.04(1) (k),[3] and to the medical staff, sec.

---

[3] Wis. Admin. Code, sec. H 24.04(1)(k) provides:
(k) The credentials committee . . . shall review applications for appointment and reappointment to all categories of the staff. They shall delineate the privileges to be extended to the applicant and make appropriate recommendations to the governing body according to the procedure outlined in the hospital's medical staff bylaws.

H 24.04(1) (e)1;[4] the governing body makes the decision regarding the appointment. Secs. H 24.02(1) (e) and H 24.04(1) (d).[5] The appellants argue that the applications are protected because they were generated solely for the purpose of evaluating Dr. Kanshepolsky and his practice. We conclude that the applications are not privileged because the governing body's consideration of whether to reappoint a physician to the hospital staff is not a "review or evaluation of the services of a health care provider" as that phrase is used in sec. 146.38, Stats.

Sections 146.37 and 146.38, Stats., were enacted to protect the confidentiality of the peer review process, in the hope that confidentiality would encourage free and open discussion, among physicians knowledgeable in an area, of the quality of treatment rendered by other physicians. Examples of peer reviews include that done by the medical records committee, required by Wis. Admin. Code, sec. H 24.04(1) (m) to "review and evaluate the quality of medical care given the patient;" by the tissue committee, required by sec. H 24.04(1) (n) to "review and evaluate all surgery performed in the hospital;" and by the medical staff at meetings held to "review, analyze, and evaluate the clinical work of its members." Sec. H 24.04(1) (o). The reviews performed by these committees are intended to aid the physicians on the hospital staff in maintaining and improving the quality of their work. They are at the core of the protection offered by secs. 146.37 and 146.38.

The governing body's consideration whether to reappoint a physician to the staff, in contrast, does not

1. The committee shall make recommendations for initial appointment, hospital privileges, promotions, and demotions.

2. The committee shall be advisory and investigative and make recommendations only. It is not given disciplinary or punitive powers.

[4] *See* note 1, *supra.*

[5] *See* note 1, *supra.*

include criticism or evaluation of the physician's practice by other physicians. The governing body itself does not review the physician's practice. Its decision will be based in part on the conclusions of the credentials committee and the active medical staff, which are based on the peer review process described above. The decision of a governing body thus is one step removed from the actual peer review.

Additionally, the results of peer reviews are not the only factors considered in the reappointment decision. The bylaws of the hospital's medical staff provide that in addition to considering the physician's professional competence and clinical judgment, the governing body will consider the physician's "ethics, conduct and compatibility," the physician's attendance at medical staff meetings and participation in staff affairs, including acceptance and discharge of committee appointments, the physician's cooperation with hospital authorities and personnel, the physician's use of hospital facilities for his or her patients, the physician's relations with other staff members, and the physician's "general attitude" toward his or her practice, patients, the hospital and the general public. It is apparent that a decision to reappoint need not turn on the quality of the treatment provided by the physician. Further, there is no indication that improving the quality of that treatment is a goal of the reappointment procedure.

Finally, any applications submitted by Dr. Kanshepolsky would consist of statements made by Dr. Kanshepolsky himself regarding his practice and treatment of patients, not statements made by other physicians. We conclude that the applications submitted by Dr. Kanshepolsky to the governing body are not protected by sec. 146.38, Stats.

We now turn to Interrogatory 18. It asks whether the hospital ever limited Dr. Kanshepolsky's medical privi-

leges and asks the nature and date of any restrictions and whether Dr. Kanshepolsky ever attempted to have a restriction lifted. The appellants argue that this information can only be found in the records of a committee review of Dr. Kanshepolsky's performance and that it is precisely the type of information protected by sec. 146.38, Stats.

The granting of professional privileges, like appointment and reappointment to the hospital staff, is done by the hospital's governing body, on recommendation by the credentials committee and the active staff. The bylaws of the hospital's medical staff provide that the determination whether privileges should be increased, maintained, or curtailed will be based on "review of the applicant's credentials, direct observation by the Active Medical Staff, [and] review of the records of the Medical and Surgical Audit, Medical Records, Tissue and other Committees."

The interrogatory thus requests the conclusions of a body which has examined the records and conclusions of several review committees; it does not request the records and conclusions of the review committees themselves. We do not think that free and open discussion among physicians sitting on review committees will be inhibited by the physicians' knowledge that someone may eventually discover conclusions which were drawn by another body and were based partially on the record and conclusions of the review committee. We therefore hold that the material requested in Interrogatory 18 is not the type of material which the legislature intended to protect under sec. 146.38, Stats.

The trial court ordered that the attorney chairperson of the panel review *in camera* any information or documents which the hospital contended was privileged under sec. 146.38, Stats. The appellants contend that if patients compensation panels adopt this procedure, the

chairperson will be prejudiced by exposure to privileged material which is detrimental to the health care provider's case and that the panel's verdict will be tainted thereby. We disagree.

Section 655.17(4), Stats., provides that at hearings before the patients compensation panel, evidence may be presented in the form of oral testimony, depositions, or interrogatories. Questions will inevitably arise at the hearings as to whether particular items of evidence should be considered by the panel members in reaching their verdict. These evidentiary questions could be decided by the circuit court; however, such a procedure would undercut the purpose of ch. 655, provision of a quick and inexpensive method of resolving medical malpractice claims. *See Mortenson v. Miller,* 99 Wis. 2d 209, 216–17, 298 N.W.2d 546, 550 (1980). We conclude it would be more consistent with the purpose of ch. 655 if the panel, rather than the circuit court, first addressed questions of the admissibility of evidence. The chairperson is the proper panel member to do so because, as an attorney, he or she will be familiar with the principles which underlie the evidentiary rules used in court hearings and will be best able to adapt them to the less formal procedure used in panel hearings.

This procedure concededly will put the chairperson in the position of being aware of inadmissible but possibly probative evidence which he or she must ignore when reaching a final decision. This position is no different from that occupied by the trial court, however, when it sits as the finder of fact and must exclude inadmissible evidence and base its findings only on the admissible evidence. The possibility that the entire panel verdict will be prejudiced is minimized by having only the panel chairperson review allegedly privileged material. The trial court's order and judgment will be affirmed.

*By the Court.*—Order and judgment affirmed.