Christopher Eric FRANZEN, a minor, Mark A. Franzen and Jeanne Lee Franzen, his parents, Plaintiffs-Respondents-Cross Appellants,

v.

CHILDREN'S HOSPITAL OF WISCONSIN, INC., Defendant-Appellant-Cross Respondent,†

Robert G. MONTGOMERY, M.D., Defendant-Cross Respondent,

XYZ INSURANCE COMPANY, Wisconsin Hospital Association Optional Segregated Account, Liberty Mutual Insurance Company, Maxicare Health Insurance Company, Primecare Health Plan, Inc., and Wisconsin Patients Compensation Fund, Defendants,

Dr. John KAMPINE, and Medical College of Wisconsin, Cross Respondents.

Court of Appeals

*No. 91-0266. Submitted on briefs March 3, 1992.—Decided May 5, 1992.*

(Also reported in 485 N.W.2d 603.)

†Petition to review denied.

For the defendant-appellant-cross respondent the cause was submitted on the briefs of *Foley & Lardner* by *Richard M. Esenberg, Jeffrey N. Costakos* and *Brian P. Akers,* of Milwaukee.

For the plaintiffs-respondents-cross appellants the cause was submitted on the briefs of *Techmeier & Lowe, S.C.,* by *Paul R. Van Grunsven,* of Milwaukee.

For the defendant-cross respondent the cause was submitted on the briefs of *Schellinger & Doyle, S.C.* by *James G. Doyle* and *Linda Vogt Meagher,* of Brookfield.

For the cross respondents the cause was submitted on the briefs of *Hinshaw & Culbertson* by *Michael J. Pfau* and *Susan R. Tyndall,* of Milwaukee.

For the Wisconsin Academy of Trial Lawyers the cause was submitted on the *amicus curiae* brief of *War-*

*shafsky, Rotter, Tarnoff, Gesler, Reinhardt & Bloch, S.C.,* by *David M. Skoglind,* of Milwaukee.

For the Wisconsin Hospital Association the cause was submitted on the *amicus curiae* brief of *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.* by *Peter A. Peshek* and *Constance L. Anderson,* of Madison.

Before Moser, P.J., Sullivan and Myse, JJ.

## FACTS

MOSER, P.J.   Christopher Eric Franzen, a minor, and his parents (collectively, Franzen) seek damages from Children's Hospital of Wisconsin, Inc. (Children's Hospital); Robert G. Montgomery, M.D., an anesthesiologist (Montgomery); and several insurers, including the Wisconsin Patients Compensation Fund. This action is based upon an alleged act of medical malpractice by Montgomery, who served on the staff at Children's Hospital from July 1982 until June 1983. On June 30, 1983, Montgomery's clinical privileges were suspended. Later, he was provisionally reinstated on the condition that his work be monitored by an ad hoc committee of physicians. The alleged malpractice injuring Franzen occurred during surgery at Children's Hospital on September 19, 1983.[1] Montgomery continued to serve on the staff of Children's Hospital until June 28, 1984. Franzen also seeks compensatory and punitive damages from Children's Hospital under the theories of vicarious liability and negligent supervision of Montgomery.

---

[1]It is not clear from the record whether Montgomery provided the anesthesia to Franzen or whether a medical resident, Werner Petrowitsch, M.D., since deceased, provided the anesthesia under the supervision of Montgomery. Franzen asserts that both Montgomery and Petrowitsch had histories of drug abuse prior to and after the alleged malpractice.

During discovery, Franzen sought information about Montgomery from various sources. One important source of information is the "credentials file" of Montgomery, which was in the possession of Children's Hospital. Children's Hospital objected to producing this file, which allegedly consists of "numerous documents generated and acquired in the course of 'peer review.' "[2] Upon Franzen's motion to compel production of these documents, the trial court conducted an in camera review of the credentials file. Following this inspection, the trial court prepared a written order, dated January 22, 1991,[3] directing that approximately fifty specifically enumerated pages be produced, reserving ruling on two other pages until review by counsel, and stating that the remaining pages[4] of the credentials file were "immune from discovery as same are determined by the court to be hospital peer review records and, therefore, privileged and immune from discovery."[5]

Franzen also sought to discover information regarding Montgomery and Petrowitsch from Dr. John Kampine, coordinator of the Medical College of Wisconsin's (MCOW) medical residency program, and from MCOW. Neither Dr. Kampine nor MCOW are parties to this action. Dr. Kampine was served with a notice of

[2] We supply the language used by Children's Hospital to describe the contents of the file.

[3] Hereafter the January 22 order.

[4] Totalling approximately 150 to 200 additional pages.

[5] Pursuant to the parties' stipulation, this court ordered that the credentials file be filed under seal and included within the record on an *in camera* basis and transmitted to this court. We note that the file received contains pages numbered 00001 through 00241, inclusive, but that pages 2–40, 45, 100, 106, 109, 114–17, 119–24, 144–46, 170, 174–76, 191, 193, and 230 were not forwarded to this court.

deposition and a subpoena duces tecum. At the deposition, under the advice of counsel, he refused to answer specific questions and also refused to provide certain documents. A hearing was held before the trial court on December 17, 1990, at which time an oral decision was rendered making specific rulings on both (1) various objections made during the deposition testimony and (2) specific subparts of the subpoena duces tecum. A written order memorializing the oral decision was entered on January 30, 1991.[6] We summarize the complexity of this detailed order by merely stating that it generally itemizes specific answers and records that Dr. Kampine is to provide and then indicates:

> [A]ll other information commanded by the subpoena served upon Dr. Kampine and which has not been produced or ordered produced by the court is hereby immune from disclosure as the court finds this information to be generated during the course of peer review and, therefore, privileged and nondiscoverable under Wisconsin Statute Section 146.38.

The January 22 order is the subject of both Children's appeal and Franzen's cross-appeal. Children's Hospital asserts that pursuant to a statute in the chapter regulating miscellaneous health provisions, sec. 146.38(2), Stats., the entire credentials file is immune to discovery. Franzen asserts that sec. 146.38(2) provides no immunity for the documents in this file.

Franzen's cross-appeal is also directed to two other orders of the trial court. First, he seeks review of portions of the January 30 order regarding the subpoena of Dr. Kampine and MCOW records. On appeal, Franzen asserts that no peer review privilege applies to any of the information commanded by the subpoena served on Dr.

---

[6]Hereafter the January 30 order.

Kampine. Second, Franzen appeals a December 4, 1990, order of the trial court that Montgomery is not required to identify either the "persons who participated in meetings or proceedings" or "any records created as a result of any meetings, proceedings or hearings held with regard to Montgomery being asked to leave Children's Hospital" on the grounds that they are privileged and therefore non-discoverable, pursuant to sec. 146.38, Stats.

## STANDARD OF REVIEW

Motions to compel discovery are addressed to the discretion of the trial court.[7] Discretionary decisions will be upheld on review when the trial court applies the relevant law to facts of record using a process of logical reasoning.[8] Basing a decision upon an error of law is an abuse of discretion.[9] When a trial court construes a statute in order to determine the correct legal principles governing the matter at hand, the construction is a question of law which this court reviews without deference to the trial court's decision.[10]

---

[7] *Vincent & Vincent, Inc. v. Spacek,* 102 Wis. 2d 266, 270, 306 N.W.2d 85, 87 (Ct. App. 1981).

[8] *State v. Robinson,* 146 Wis. 2d 315, 330, 431 N.W.2d 165, 170 (1988).

[9] *Dyson v. Hempe,* 140 Wis. 2d 792, 800, 413 N.W.2d 379, 382-83 (Ct. App. 1987).

[10] *Gonzalez v. Teskey,* 160 Wis. 2d 1, 7-8, 465 N.W.2d 525, 528 (Ct. App. 1990).

Because the starting point for construction of a statute is its language,[11] we begin our analysis by setting forth the full text of sec. 146.38(2), Stats.:

> All organizations or evaluators reviewing or evaluating the services of health care providers shall keep *a record of their investigations, inquiries, proceedings and conclusions.* No such record may be released to any person under s. 804.10(4)[12] or otherwise except as provided in sub. (3). No such record may be used in any civil action for personal injuries against the health care provider or facility; however, *information, documents or records presented during the review or evaluation* may not be construed as immune from discovery under s. 804.10(4) or use in any civil action merely because they were so presented. Any person who testifies during or participates in the review or evaluation may testify in any civil action as to *matters within his or her knowledge,* but may not testify as to information obtained through his or her participation in the review or evaluation, nor as to any conclusion of such review or evaluation. (Emphasis and footnote added.)

We first note that the plain language[13] of this section creates three distinct categories of materials: (1) a "record of [ ] investigations, inquiries, proceedings and

[11]*In re J.W.T.,* 159 Wis. 2d 754, 761, 465 N.W.2d 520, 523 (Ct. App. 1990).

[12]Section 804.10(4), Stats., which governs the release of treatment records when the release is authorized by the treated individual, has no bearing on the records which are at issue here. Franzen does not appeal any decisions concerning the release of his own records.

[13]*In re J.W.T.,* 159 Wis. 2d at 761, 465 N.W.2d at 523.

conclusions," (2) "information, documents or records presented during the review," and (3) "matters within [a person's] knowledge." Materials in the first category are expressly protected from the discovery process. Materials in the second category are not protected by this subsection. Materials in the third categories are expressly made available in "any civil action."

Furthermore, the plain language of the statute describes two categories of "records." The first category is records of four enumerated activities, i.e., investigating, inquiring, proceeding and concluding, performed by either of two particular types of entities, i.e., organizations or evaluators engaged in the process of review.

■

Because the terms "organization" and "evaluator" are used in our subsequent analysis, we digress briefly. In *State ex rel. Good Samaritan Medical Center-Deaconess Hospital Campus v. Moroney*,[14] this court concluded that sec. 146.38(2), Stats. (1987–88), was ambiguous because it was "unclear whether the phrase, 'organizations reviewing or evaluating the services of health care providers' " referred to only bodies described as 'peer review committees' or also included the governing body of a hospital.[15] Subsequently, the legislature amended sec. 146.38 by (1) addition of the term "evaluator" to the previously unclear phrase and (2) provision of specific definitions pertinent to that term.[16] Pursuant to sec. 146.38(1)(a), " '[e]valuator' means a medical director or a

---

[14]123 Wis. 2d 89, 365 N.W.2d 887 (Ct. App. 1985).

[15]*Id.* at 94–96, 365 N.W.2d at 890–91.

[16]*See* secs. 33–35, 1989 Wis. Act. 102, eff. July 1, 1990. Statutory definitions control the plain meaning of words used in the context of the statute. *State ex rel. Girouard v. Circuit Court for Jackson County,* 155 Wis. 2d 148, 156, 454 N.W.2d 792, 795–96 (1990).

registered nurse who coordinates review of an emergency medical services program of a health care provider." Pursuant to sec. 146.38(1)(c), " '[m]edical director' has the meaning specified in s. 146.50(1)(j)," which is "a physician who trains, medically coordinates, directs, supervises, establishes standard operating procedures for, and designates physicians for direction and supervision of, emergency medical technicians and who reviews the performance of emergency medical technicians and ambulance service providers." There is no definition of "organization" in sec. 146.38, Stats.,[17] so we determine the common usage from an approved dictionary[18]: "organization: . . . 2. something organized: . . . a group of people that has a more or less constant membership, a body of officers, a purpose, and usu[ally] a set of

[17]However, there are sixteen other statutes, including three in chapter 146, Stats., which provide definitions of the term "organization": secs. 19.42(11), 46.93(1m)(d), 46.95(1)(d), 46.975, 46.977(1)(b), 46.997(1)(e), 48.982(1)(d), 50.90(2), 146.022(1)(d), 146.027(1)(c), 146.56(1)(b), 220.04(7)(a)3, 223.105(1)(b), 401.201(28), 421.301(28), 428.102(5), Stats. The three chapter 146 definitions, which are particularly persuasive in interpretations of sec. 146.38(2), limit "organization" to either a nonprofit corporation or public agency, terms which could not be applied to any internal hospital entity. The definitions in the remaining statutes are slightly broader, but in general refer only to such legally defined entities as nonprofit corporations, public agencies, county departments, Indian tribes, stock corporations, etc. (The single exception is the inclusion of "a private, nonprofit agency," in sec. 46.977(1)(b), Stats. (guardianship grants).)

[18]A finding of ambiguity "is not necessary or appropriate" before resort to a dictionary to determine the "meaning that is plain on the face" of a statute. *See Girouard,* 155 Wis. 2d at 156, 454 N.W.2d at 796.

regulations."[19]

Children's Hospital essentially adopts the position that any member of its professional staff, i.e., all nurses or physicians who play any role in its quality control program, constitute an organization reviewing the services of itself.[20] This is a circular argument that is overly broad, particularly in light of the statutory definitions narrowly limiting the term "evaluator" to particular individuals with administrative rank *and* defined functions[21] and limiting the term "organization" to legally defined entities.[22] To constitute an organization for the purposes of subsection (2), a group must be determined to have at least some of the attributes set forth above, i.e., membership, officers, purpose, regulations. Furthermore, the mere existence of either an organization or an evaluator is not sufficient to invoke the protections of sec. 146.38(2), Stats. As we discuss in more detail *infra,* only records of certain specific activities of these entities are protected.[23]

Resuming our discussion of the term "record" as used in sec. 146.38(2), Stats., the second category of record created by the subsection contains records "presented" during the review or evaluation. "Present" is a transitive verb with the meaning "to bring or intro-

---

[19] *Webster's Third New International Dictionary* 1590 (1976) (hereafter *Webster's).*

[20] *See, e.g., infra* note 38.

[21] *See* secs. 146.38(1)(a)&(c) and 146.50(1)(j), Stats.

[22] *See supra* note 17.

[23] *Cf. Jax v. Jax,* 73 Wis. 2d 572, 581, 243 N.W.2d 831, 836 (1976) ("A mere showing that the communication was from a client to his attorney is insufficient to warrant a finding that the communication is privileged.").

duce into the presence of someone (as a superior)"[24] or "to lay or put before a person for acceptance."[25] Subsection (2) thus contemplates that certain records will be placed before the evaluator/organization by *some other* person or entity. The subject, form and/or content of the presented records is not limited by the statute. The identity of the presenter is also not limited, although the standard usage indicates that some entity other than the evaluator/organization itself brings or introduces the record.

The purpose of statutory construction is to determine legislative intent.[26] Where the intent may be determined by examination of the statutory language alone, as in this case, our inquiry ends.[27]

We hold that the statutory language creates a clear duty for the trial court: to first distinguish these two types of records and to subsequently determine if the recorded information is expressly protected from discovery by subsection (2), if it is potentially discoverable, or if it is expressly available for discovery. This holding requires that the trial court make three distinct findings of fact:

> (1)   identify those individuals preparing a record in order to determine if they are either evaluators or members of an organization "reviewing or evaluating services,"[28]

---

[24] *Webster's* at 1793.

[25] *Id.*

[26] *J.W.T.*, 159 Wis. 2d at 761, 465 N.W.2d at 523.

[27] *See id.*

[28] The parties do not raise, so we do not address, the degree to which delegation of the privilege is appropriate and/or the mechanism by which such delegation occurs.

(2) determine if a record pertains to an investigation, inquiry, proceeding or conclusion of the evaluator or organization identified in step one,

(3) determine if a record was *presented to* the evaluator/organization or *was kept by* the evaluator/organization.

The trial court should note that care will be required when information is generated by a person who is both allegedly a participant in the review process of a health care provider and is simultaneously a co-worker performing duties in conjunction with, or in the vicinity of, a particular health care provider under review, e.g., a nurse reporting incidents of patient care involving physicians or other nurses. Focus on the four enumerated activities will be helpful in such cases, but such a focus must not be allowed to overshadow the more fundamental distinction between the presentation of information *to* the evaluator/organization and the review of information *by* the evaluator/organization.

Bearing in mind the plain language of the statute, we now examine the trial court's reading of the statutory language, which was the basis of its discretionary decision to release or retain specific pages of the credentials file. After quoting *only the first two sentences of the subsection,* the trial court stated:

I would say that that is a formalized procedure, and this Court is prepared to protect from disclosure all documents generated specifically in preparation for that review or evaluation, as well as those generated within that review or evaluation; however, informal and ongoing written observations and notes which are not part of a specific designated review evaluation are not so protected. In other words, written observations and reports about a physician's behavior and performance based upon a general hos-

pital policy of an ongoing monitoring process do not
qualify as peer review as contemplated in 146.37 and
146.38 in this Court's judgment . . ..

This statement shows that the trial court interpreted the
subsection as utilizing the existence of a "formalized
procedure" to separate materials into two categories: (1)
documents generated specifically in preparation for the
formal review or (2) informal and ongoing written obser-
vations that were part of some ongoing monitoring pro-
cess not directly connected to the formal review process.
The trial court then proceeded to determine the approxi-
mate date upon which the formalized procedure pertain-
ing to Montgomery began and separated the documents
in the file on that basis. Documents produced prior to
that date were released, documents produced subsequent
to that date were withheld. Similarly, documents pro-
duced after the review procedure had terminated were
released to Franzen.

However, we note that the statutory language does
not contain any reference to either a formalized proce-
dure or to use of dates to classify information.[29] Even

[29]We note that the parties to this action repeatedly refer to
this statute as the "peer review statute," a term also adopted by
the trial court. We make two observations. First, the term "peer
review" is not contained in section 146.38, Stats. Although the
term is found in reference documents providing the legislative
history of the statute, it is clear that too early a focus on this term
had the unfortunate effect of distracting from a careful analysis of
the language that *must be* the starting point in any statutory
construction. "A court cannot resort to statutory history for the
purpose of rendering an otherwise clear statute ambiguous."
*Girouard,* 155 Wis. 2d at 156, 454 N.W.2d at 795. *Girouard's*
discussion of error induced by "revers[ing] the appropriate order
of reasoning" in statutory analysis, *id.* at 154–56, 454 N.W.2d at
794–96, is particularly germane. Our second observation is that

more importantly, our examination of the record does not reveal any attempt by the trial court to identify "information, documents or records presented during the review" which do not constitute a record of the evaluating entity's four statutorily enumerated activities. Nor was there an effort to determine if a given document was in fact prepared by an evaluator/organization or prepared by persons external to the entity and presented to it.

For these reasons, we hold the trial court's interpretation of sec. 146.38(2), Stats., was incorrect because it failed to adequately consider the third and fourth sentences of sec. 146.38(2). We remand with directions to perform an *in camera* review of the credentials file applying the legal principles clarified in this opinion. We also direct the trial court's attention to the fact that specific pages of the file tendered to this court appear to be missing, based upon the numbering sequence.[30] Because Franzen's counsel may not be able to inspect the entire file, we hold that the trial court has a duty to inquire so as to ensure the completeness of the file subjected to its *in camera* review.

For the further guidance of the trial court, we note that the physical entity, the "credentials file" of Montgomery, presumptively consists of two types of records

the term "peer review" is used in an adjacent statute, sec. 146.37, Stats. However, this court has previously held that the legislature intended to only limit the liability of peer review participants, not expand a privilege of confidentiality. *See Mallow v. Angove,* 148 Wis. 2d 324, 330–31, 434 N.W.2d 839, 841–42 (Ct. App. 1988). After *Mallow,* designating sec. 146.38, Stats., as "*the* peer review statute" is not only inappropriate, it is actually misleading.

[30]*See supra* note 5.

used in the review and evaluation process.[31] One set of documents is produced by "organizations and/or evaluators" and records their own specific activities pertaining to "reviewing or evaluating the services of health care providers," i.e., investigating, inquiring, proceeding and concluding. The other set of documents is produced by persons engaged in activities other than "reviewing or evaluating," i.e., undergoing treatment, caring for patients, providing janitorial services or security, visiting friends or relatives, or delivering products such as flowers or medical supplies, to set forth only a few of the infinite possibilities.

The relevant test for production of these documents starts with the broader provisions of discovery in Wisconsin:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangi-

---

[31]Children's concedes that the documents which were examined *in camera* by the trial court were part of the review process. This concession is made by direct statement in the appellant's brief ("It is undisputed that [the documents the court ordered must be produced] were generated in the course of the ongoing program of evaluation.") and by incorporation of an affidavit of an employee of Children's Hospital into the appellant's brief ("All other materials contained within the Credentials File pertain to information involved in reviewing and evaluating the quality of medical care . . .." Facts asserted by a party in a brief may be asserted against that party even though not part of the official record. *Sova v. Ries,* 226 Wis. 53, 55, 276 N.W. 111, 112 (1937).)

ble things and the *identity and location of persons having knowledge of any discoverable matter.*[32]

While a particular document in the credentials file may not be relevant, or may be subject to privileges arising under the common law or statutes other than sec. 146.38(2), Stats.,[33] the initial position of this court is that it is appropriate to permit their use by the plaintiff. As provided by sec. 804.01(2)(a), Stats., the plaintiff may use the documents to identify "persons who have participated in the review process" in order to solicit their "testi[mony] in a civil action as to matters within their own knowledge," pursuant to sec. 146.38(2).

If it is asserted that information is privileged, the party asserting the privilege bears the burden to establish that the privilege exists.[34] Privileges created by statute are strictly and narrowly interpreted.[35] When determining whether a privilege exists, the trial court must inquire into the existence of the relationship upon which the privilege is based *and* the nature of the information sought.[36] We note, for the guidance of the trial court,[37]

[32]Section 804.01(2)(a), Stats. (emphasis added).

[33]*See, e.g.,* sec. 905.04, Stats. (physician-patient privilege); sec. 146.82(1), Stats. (confidentiality of patient health care records); or sec. 905.03, Stats. (attorney-client privilege).

[34]*Dyson,* 140 Wis. 2d at 802, 413 N.W.2d at 384.

[35]*Staples v. Glienke,* 142 Wis. 2d 19, 27, 416 N.W.2d 920, 924 (Ct. App. 1987) (citing *Davison v. St. Paul Fire & Marine Ins. Co.,* 75 Wis. 2d 190, 197, 198–99, 248 N.W.2d 433, 438 (1977)).

[36]*See Jax,* 73 Wis. 2d at 581, 243 N.W.2d at 836. The erroneous decision of the *Jax* trial court, which examined only the existence of a relationship (attorney-client) without also examining the information content of the allegedly privileged communication is analogous to the decision of the trial court in the case at

that the supreme court has specifically stated such decisions may not be left to the judgment of professionals involved.[38] However, the opponent of the privilege has the burden to challenge the preliminary questions of privilege before the trial court.[39] Although the parties in the instant case vigorously challenged whether specific documents were or were not privileged under sec. 146.38(2), at no time was there a specific inquiry concerning the identities of individuals competent to claim

bar, which considered as dispositive the alleged existence of an "peer review," *see supra* note 29, organization encompassing the entire hospital staff without also considering whether the activities enumerated in sec. 148.36, Stats., were being performed by that group.

[37]*See id.,* at 586–87, 243 N.W.2d at 839 (notation of further error in order to avoid similar error on retrial).

[38]*See id.,* at 581, 243 N.W.2d at 836. *Jax* stated that it was error for the trial court to defer the decision regarding attorney-client privilege to the judgment of the attorney-witness, citing sec. 901.04(1), Stats., " '[p]reliminary questions concerning . . . the existence of a privilege . . . shall be determined by the judge.' " In the following exchange, the trial court clearly deferred the determination to the witness Cynthia Christiansen, a registered nurse acting as Director of Health Services and Risk Manager at Children's Hospital:

> Christiansen: We have a number of mechanisms of reviewing the care that patients get at the hospital. Peer review is one of those mechanisms, and it occurs in a number of ways. One of the ways is through the quality assurance of the hospital.
> Trial Court: So you're saying quality assurance is part of the peer review?
> Christiansen: That's right.
> Trial Court: All right. I guess I have to come down in favor of this being a privileged document. . . . I have been assured by hospital representative Christiansen that it is a part of quality assurance, which is part of peer review.

[39]*Dyson,* 140 Wis. 2d at 802–03, 413 N.W.2d 384.

a privilege extended only to records of specific activities of "an evaluator" or an "organization."[40]

In its analysis of the file, one factor that the trial court should consider is the obvious purpose of a document. For example, the trial court protected from discovery a telephone message slip (identified as page 00001). The document consisted of preprinted labels followed by blank lines for such information as the caller's name, company and telephone number; specific handwritten entries filled these blanks. It does not bear the name of either Montgomery or any member of the Franzen family. The preparer of the document is indicated only by a first name. The first names of the members of the evaluating entity are not in the record. The trial court should determine if the document's obvious purpose is to inform someone of a telephone call received in their absence or if the document had some other purpose connected with the review of health care services. The document's significance in the case is not evident to this court.[41] However, it is most certainly a "document" and its presence in the credentials file supports an inference that it was "presented during the review process."[42] Should the trial court find that the purpose of the document was to inform a person about a telephone call, page

[40]*See, e.g.,* the questioning of Ms. Cynthia Christiansen, a registered nurse, *supra* note 38.

[41]However, it is the task of counsel to diligently seek to discover that relevance and present it to the judiciary. A person asserting a privilege has the burden to prove that document fits into the privilege. *See, e.g.,* secs. 905.02 and 905.04, Stats. The party seeking to discover information has only the burden to prove that it "appears reasonably calculated to lead to the discovery of admissible evidence." Section 804.01(2)(a), Stats.

[42]*See* sec. 146.38(2), Stats.

00001 "may not be construed as immune from discovery under s. 804.10(4) or use in any civil action merely because [it was] presented [to an evaluator or organization at a later time]."[43]

Other documents which the trial court did not release, based upon their dates, also contain indicia that they were prepared for routine purposes other than "investigating, inquiring, proceeding or concluding," by persons in roles other than those "reviewing or evaluating services." Consider, for example, the following. First, page 00069, which bears the printed logo "Children's Hospital Operative Record" and was presumptively used for the purpose of conveying certain information about that patient to other staff involved in post-operative care. Second, page 00192, which is a subpoena prepared by an attorney not involved in this litigation and was presumptively used to compel a person's attendance in court in an action unrelated to the case at bar.[44] Third, page 00241, which is a letter from another physician to Montgomery "insist[ing] that . . . the full length of [a tube]" be used in the future to avert a particular complication, and was presumptively intended to prevent such complications in the future. Although the persons preparing these documents may well have had purposes other than to evaluate Montgomery's provision of services, the documents obviously might have been useful to an evaluator/organization examining his provision of health care services.

■

These documents, and the information contained in them, would be equally useful to a second group seeking to evaluate Montgomery's actions: six or twelve citizens

---

[43]See sec. 146.38(2), Stats.

[44]We also note that subpoenas are filed as public records and thus cannot be considered privileged. See sec. 59.39, Stats.

serving as a jury. The persons preparing these documents may reasonably be presumed to have information relating to Montgomery's character, habits and medical skills which might be "reasonably calculated to lead to the discovery of admissible evidence."[45] In any case, the information in the documents they produced is a matter within their own knowledge and they may be compelled to testify to such information, pursuant to sec. 146.38(2), Stats. Furthermore, even if the authors of these documents are prevented from revealing information because of other privileges,[46] providing the identities of the nonparty privilege holders contained in the document may lead to discovery of admissible material in the event that the privilege holders decline to assert their privilege.

A second factor for the trial court to consider is the specific language of documents in the file which indicate that either the document itself, or other documents, should be regarded as information presented to the "evaluator" or "committee," rather than records of the activity of a committee.[47] For example, page 00135 states, "I have decided to accumulate the minor incidents in regard to Dr. Robert G. Montgomery, rather than to present them to him." The trial court should consider whether this indicates that the material is being gathered, i.e., obtained from a source other than the evaluator/organization, rather than produced as a record of that evaluation. Similarly, page 00143 characterizes

[45]*See* sec. 804.01(2)(a), Stats.

[46]*See, e.g.,* sec. 905.04, Stats. (physician-patient privilege); sec. 146.82(1), Stats. (confidentiality of patient health care records); or sec. 905.03, Stats. (attorney-client privilege).

[47]The documents themselves may also contain information useful to the analysis of other privileges. For example, page 00058 specifically states that it is "not part of the Medical Record."

material as "all the data that I can find in regard to Bob Montgomery."

## IDENTITY OF COMMITTEE MEMBERS

Franzen challenges the trial court's order of December 4, 1990, which permitted Montgomery to refuse to provide the names of hospital staff members participating in hearings held with regard to his being asked to leave.[48] In response, Montgomery asserts that these hearings are part of the peer review process, and that he is thus asked to reveal information which he could only have obtained through participation in the peer review process.

Franzen again relies upon *State ex rel. Good Samaritan v. Moroney*.[49] *Moroney* specifically held that "conclusions of a body which has examined the records and conclusions of several review committees" is not the type of material which the legislature intended to protect under sec. 146.38, Stats.[50] The focus of *Moroney* was whether an organization variously described as a "cre-

---

[48]Franzen also appeals the trial court's denial of access to the records of these hearings. It is unclear from either the order or the parties' appellate briefs whether Montgomery or Children's Hospital is in possession of the records sought. Franzen's original motion to compel discovery, to which this order responds, was addressed to both Montgomery and John Knothe, Director of Risk Management at Children's Hospital. Neither Montgomery nor Children's Hospital addresses the issue of the records, although Montgomery has filed a separate reply directed to his deposition testimony. We decline to address issues which are inadequately briefed. *See In re Balkus*, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985).

[49]123 Wis. 2d 89, 365 N.W.2d 887 (Ct. App. 1985).

[50]*Id.* at 100, 365 N.W.2d at 893.

dentials committee"[51] or "governing body"[52] could assert the privilege of sec. 146.38(2). We note that although the *Moroney* analysis discusses many subtle distinctions between layers of committees which review the recommendations of other committees, ultimately the *Moroney* court upheld the decision of the patient compensation panel's attorney-chairperson and directed that "all applications for renewal (in effect the entire personnel file or files of Jose Kanshepolsky, M.D.)"[53] could be examined by the plaintiff.[54]

In our review of the "credentials file" we noted the existence of the "Executive Committee,"[55] a "subcommittee chaired by Dr. [Blank],"[56] and the "Ad Hoc Committee for monitoring Dr. R.G. Montgomery's compliance to the conditions for reinstatement of his privileges at this hospital."[57] There is no finding of fact as to the nature of the activities of these committees, nor as to which of them held the hearings in question.[58] While the nature of a committee's activities might seem apparent from its title, e.g., the "Ad Hoc Committee," *supra,* would presumably function primarily to monitor Montgomery's compliance with conditions, not to improve the quality of health care, it is not the function of this court

[51]*Id.* at 94, 365 N.W.2d at 890.

[52]*Id.* at 95, 365 N.W.2d at 890.

[53]*Id.* at 93, 365 N.W.2d at 889.

[54]*Id.* at 99, 365 N.W.2d at 892 (holding that "governing body's considerations" are not protected by sec. 146.38, Stats.).

[55]Credentials file pages 00090–00096.

[56]Credentials file page 00110.

[57]Credentials file page 00133.

[58]No omission should be attributed to Franzen's counsel, which has not yet viewed the majority of these pages.

to make findings of fact.[59] However, we note that if a finding of fact is made that the committee was formed for the purpose, *inter alia*, of monitoring Montgomery's handling of addictive drugs, this activity would not be a direct review of a "program organized and operated to help improve the quality of health care"[60] but would, rather, be "one step removed from the actual peer review."[61]

We remand this discovery issue to the trial court with directions to determine the function of the entity holding the hearings and then proceed in the light of our earlier analysis of the sec. 148.36(2) privilege.

### OVERBROAD DISCOVERY REQUESTS

Franzen challenges the trial court's denial of two specific discovery requests directed to Dr. Kampine and MCOW. The trial court's orders provide two reasons for its denial of these requests. First, the requests were overbroad. Second, the materials sought were privileged under sec. 146.38, Stats.[62] Under sec. 804.01(3), Stats., the trial court is given the discretion to protect parties from "undue burden or expense." The oral decision and written order of the trial court are detailed and specific. Each of the plaintiff's numerous requests were examined individually and discussed with counsel. In fact, plaintiff's counsel withdrew another [unappealed] request;

---

[59]*Wurtz v. Fleischman,* 97 Wis. 2d 100, 107 & n.3, 293 N.W.2d 155, 159 & n.3 (1980).

[60]*Moroney,* 123 Wis. 2d at 97, 365 N.W.2d at 891.

[61]*Id.* at 99, 365 N.W.2d at 892.

[62]The trial court enunciated both grounds in its oral decision of December 17, 1990. However, in the written order drafted by counsel, the reason provided for the denial of one of the specific requests was only the sec. 146.38 privilege.

specifically agreed on the record that the first appealed request needed to be more specific; and did not disagree when the trial court commented on the vagueness of the second appealed request, compared it to the withdrawn request, and finally described it as a "catch-all, 'copy of your entire file of notes, records, correspondence, applications, evaluations and other information in your possession or which you are capable of obtaining and in any way relating to Robert G. Montgomery or Werner G. Petrowitsch.' " This record shows that there was an adequate consideration of the relevant legal principles of discovery applied to the facts of this case (the text of the written requests), coupled with a rational mental process stated on the record.[63] For these reasons, we affirm the trial court's decision to deny discovery. Having upheld the decision on one of the two stated bases, we need not consider the second, i.e., the application of sec. 146.38.[64]

*By the Court.*—Order affirmed in part and reversed in part and cause remanded.

---

[63]*See Robinson,* 146 Wis. 2d at 330, 431 N.W.2d at 170.

[64]*See Sweet v. Berge,* ·113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (citing *Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938)).