Scott MALLON, Susan Mallon, and Ashley Mallon, by her Guardian ad Litem, Curtis M. Kirkhuff, Plaintiffs-Appellants,

v.

Craig W. CAMPBELL, M.D., Wisconsin Patients Compensation Fund, Columbus Community Hospital, Wisconsin Association Optional Segregation Account, Professional Insurance Company, Renato Diancin, M.D., and Physicians Insurance Company of Wisconsin, Inc., Defendants-Respondents.

Court of Appeals

*No. 92–3037. Submitted on briefs May 6, 1993.—Decided July 8, 1993.*

(Also reported in 504 N.W.2d 357.)

279

For the plaintiffs-appellants the cause was submitted on the briefs of *Curtis M. Kirkhuff* of *Pellino, Rosen, Mowris & Kirkhuff, S.C.* of Madison.

For the defendant-respondent the cause was submitted on the brief of *Curtis C. Swanson, Joy L. O'Grosky* and *Marcia MacKenzie* of *Axley Brynelson* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J. We granted the Mallons leave to appeal from an order denying their motion to compel discovery after reconsideration.[1] The issues are: (1) whether the trial court was barred by sec. 806.07, Stats., from deciding the reconsideration motion on the merits; and (2) whether the content of an interview of a switchboard operator, conducted by the Columbus Community Hospital administrator, was privileged under sec. 146.38(1m), Stats.,[2] and, therefore, not discoverable.

We conclude that the trial court acted within the scope of its authority in reaching the merits of the reconsideration motion. However, we hold that the record fails to establish that the administrator was acting on behalf of, or as part of, an organization reviewing the services of a health care provider. Finally, we conclude that information acquired by the administrator during his investigation is not privileged under sec. 146.38(1m), Stats. Therefore, we reverse and remand the cause for further proceedings consistent with this opinion.

## BACKGROUND

Ashley Mallon was born to Susan and Scott Mallon on December 12, 1986. She was delivered by means of an emergency cesarean section which was performed after Susan was transferred from Columbus Community Hospital to a hospital in Beaver Dam. In their

---

[1] This appeal has been expedited pursuant to Rule 809.17, Stats.

[2] Section 146.38(1m), Stats., provides:

No person who participates in the review or evaluation of the services of health care providers or facilities or charges for such services may disclose any information acquired in connection with such review or evaluation except as provided in sub. (3).

complaint, the Mallons allege that Ashley suffered permanent brain damage at birth. They further allege that Ashley's injuries were caused by the negligent care rendered to Susan during her pregnancy and delivery by Doctors Campbell and Diancin and the Columbus Community Hospital (the hospital).

During the course of discovery, the Mallons deposed Miles Meyer, the administrator of the hospital, and Helen Gehrke, the hospital switchboard operator on duty when Susan Mallon was transferred to Beaver Dam. Gehrke testified that Dr. Campbell, who was on call to perform emergency cesarean sections at the hospital on December 12, 1986, notified her that he would be gone from 9:15 a.m. to 5:00 p.m. that day. She also stated that she did not inform the obstetric department that Campbell would be unavailable.

Meyer testified that he investigated Susan Mallon's case. However, counsel for the hospital instructed Meyer not to answer any questions regarding his conversation with Gehrke during the investigation. Counsel claimed that the investigation formed part of the hospital's peer review process, and that the information Meyer obtained was privileged.

The Mallons brought a motion to compel Meyer to answer the questions concerning his discussion with Gehrke. The hospital opposed the motion, claiming the information was protected under sec. 146.38(1m), Stats. After briefs and a hearing at which counsel presented arguments but no evidence, the trial court ruled in the hospital's favor. The trial court held that Meyer was performing an evaluation of the care provided by the hospital to Susan, and that "all conversations, questions and answers made by or given to Mr. Meyer in his review of the health care provided [were] protected by [sec.] 146.38[(1m)]."

The Mallons requested the trial court to reconsider its order in light of our decision in *Franzen v. Children's Hosp. of Wis., Inc.*, 169 Wis. 2d 366, 485 N.W.2d 603 (Ct. App. 1992). The trial court denied the motion, distinguishing *Franzen* from the case at bar. The trial court noted that in *Franzen*, we were interpreting subsec. (2), rather than subsec. (1m), of sec. 146.38, Stats., and that we were addressing whether records, rather than testimony, were privileged under the statute. The Mallons now appeal from the trial court's denial of their reconsideration motion.

## STANDARD OF REVIEW

Resolution of the privilege issue requires us to interpret sec. 146.38(1m), Stats. Statutory interpretation is a question of law which we review independently of the trial court. *State ex rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 225, 496 N.W.2d 177, 179 (Ct. App. 1992).

## TRIAL COURT'S AUTHORITY

The hospital contends that the Mallons could only seek relief from the denial of their motion to compel discovery under sec. 806.07, Stats. They further argue that because the Mallons failed to satisfy the requirements of sec. 806.07, the trial court lacked the authority to reach the merits of the reconsideration motion. We disagree.

In *Fritsche v. Ford Motor Credit Co.*, 171 Wis. 2d 280, 294–95, 491 N.W.2d 119, 124 (Ct. App. 1992), we rejected a similar argument. We stated: "We see no reason why a trial court, having concluded that a prior nonfinal ruling in a pending case is wrong, cannot cor-

rect that error by reconsideration. We conclude that [the respondent's] motion is not governed by sec. 806.07[, Stats.]" *Id.* at 295, 491 N.W.2d at 124. As the order denying the Mallons' discovery motion was nonfinal, we follow *Fritsche* and hold that the trial court could properly decide the motion on its merits.

## PRIVILEGE

### Methodology

█

It is a well-established rule of statutory interpretation that we may consider sections related to the statute being construed. *Frederick*, 173 Wis. 2d at 226, 496 N.W.2d at 179. Accordingly, the Mallons urge us to interpret sec. 146.38(1m), Stats., in light of sec. 146.38(2), Stats.,[3] and our decisions interpreting that subsection, especially *Franzen.* The hospital, on the other hand, argues against application of the rule because sec. 146.38(2) concerns the protection of records kept during reviews by organizations and

---

[3] Section 146.38(2), Stats., provides:

All organizations or evaluators reviewing or evaluating the services of health care providers shall keep a record of their investigations, inquiries, proceedings and conclusions. No such record may be released to any person under s. 804.10(4) or otherwise except as provided in sub. (3). No such record may be used in any civil action for personal injuries against the health care provider or facility; however, information, documents or records presented during the review or evaluation may not be construed as immune from discovery under s. 804.10(4) or use in any civil action merely because they were so presented. Any person who testifies during or participates in the review or evaluation may testify in any civil action as to matters within his or her knowledge, but may not testify as to information obtained through his or her participation in the review or evaluation, nor as to any conclusion of such review or evaluation.

evaluators, while sec. 146.38(1m) pertains to the people who participate in reviews of services rendered by health care providers.

The hospital's argument is refuted by the last sentence of sec. 146.38(2), Stats., which discusses persons participating in reviews of health care providers. From reading sec. 146.38(1m) and (2), Stats., it is clear that the two subsections are interrelated. Persons participating in reviews of health care providers must comply with subsec. (1m) regarding information acquired in connection with such reviews. But those same individuals follow subsec. (2) when called upon to testify as to matters within their own knowledge. Thus, as the Mallons urge, we will now consider subsec. (2) and accompanying decisions in interpreting subsec. (1m).

## Prior Cases

According to sec. 146.38(2), Stats., organizations and evaluators are the entities who actually review and evaluate the services of health care providers. Therefore, persons who participate in such reviews are either evaluators or are acting on behalf of, or as part of, an organization. Under sec. 146.38(1)(a), Stats., an evaluator is either a medical director or a registered nurse who coordinates the review of an emergency medical services program. As Meyer is neither a medical director nor a registered nurse, we focus on whether he was acting on behalf of, or as part of, an organization reviewing or evaluating the services of a health care provider.

In *State ex rel. Good Samaritan Medical Center-Deaconess Hosp. Campus v. Moroney*, 123 Wis. 2d 89, 365 N.W.2d 887 (Ct. App. 1985), we decided whether a hospital governing body considering a physician's reap-

pointment to the medical staff qualified as an "organization[ ] . . . reviewing or evaluating the services of health care providers." We noted that the phrase was ambiguous. *Id.* at 94–96, 365 N.W.2d at 890–91. After considering sec. 146.37, Stats., we concluded that only those reviews "conducted in connection with any program organized and operated to help improve the quality of health care, to avoid improper utilization of the services of health care providers or facilities or to determine the reasonable charges for such services" were afforded protection under sec. 146.38(2), Stats. *Id.* at 96–97, 365 N.W.2d at 891; *see also* sec. 146.37.

In applying this principle, we stated that peer reviews, such as those performed by the medical records and tissue committees,[4] were "at the core of the protection offered by [sec. 146.38, Stats.]" *Moroney*, 123 Wis. 2d at 98, 365 N.W.2d at 892. On the other hand, because the decision to reappoint a physician did not depend solely on the quality of the treatment provided by the physician, the governing body's decision was "one step removed from the actual peer review," and not part of a program organized and operated to help improve the quality of health care. *Id.* at 99, 365 N.W.2d at 892.

In *Franzen*, the issue arose as to what is meant by the term "organization." Children's Hospital contended that all nurses or physicians who played any part in its

[4] Previous Department of Health and Social Services (DHSS) regulations expressly provided that hospitals maintain these two medical staff committees. The duties of the medical records committee were specified in Wis. Adm. Code sec. H 24.04(1)(m) (Apr. 1984); the tissue committee was discussed in Wis. Adm. Code sec. H 24.04(1)(n) (Apr. 1984). Neither committee is mentioned in current DHSS regulations.

quality control program constituted an organization reviewing its services. *Franzen*, 169 Wis. 2d at 380, 485 N.W.2d at 608. We rejected the argument, finding the proposed definition "circular" and "overly broad." *Id.* We noted that neither sec. 146.38(2), Stats., nor any other provision in ch. 146, Stats., contained a definition which could apply to an internal hospital entity. *Id.* at 379 & n.17, 485 N.W.2d at 607–08 & n.17. Relying on WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1590 (1976), we defined an organization as " 'a group of people that has a more or less constant membership, a body of officers, a purpose, and usu[ally] a set of regulations.' " *Id.* at 379–80, 485 N.W.2d at 607–08.

■

In the case before us, the hospital claims that Columbus Community Hospital "is an organization as that word is used in the English language." This argument also strikes us as being overly broad, and, therefore, we reject it.

### Application of Principles

■

Based on the foregoing discussion, Meyer's investigation into the care provided to Susan Mallon is protected under sec. 146.38(1m) and (2), Stats., only if it is determined that: (1) the investigation was part of a program organized and operated to improve the quality of health care at the hospital; and (2) Meyer was acting on behalf of, or as part of, a group with relatively constant membership, officers, a purpose and a set of regulations. As the party asserting the privilege, the hospital bears the burden of establishing that these two conditions were satisfied. *See Franzen*, 169 Wis. 2d at 386, 485 N.W.2d at 610.

The only "evidence" to support the hospital's claim of privilege is found in portions of two depositions of Meyer attached to an affidavit filed in opposition to the Mallons' motion. The trial court based its conclusion that Meyer's conversations were privileged primarily on Meyer's conclusory statements that his investigation was done in the context of the hospital's peer review process.

Such evidence is inadequate in several respects and cannot support the trial court's rulings. First, in taking Meyer's statements at face value, the trial court has deferred the determination of privilege to the judgment of the professionals involved. That is not the test. *See Jax v. Jax*, 73 Wis. 2d 572, 581, 243 N.W.2d 831, 836 (1976); *Franzen*, 169 Wis. 2d at 386–87 & n.38, 485 N.W.2d at 610–11 & n.38. Second, there are virtually no facts from which the trial court could have concluded either that the investigation was part of an organized program, or that Meyer was acting on behalf of a group with any of the organizational characteristics described above.

Because the hospital bore the burden of establishing the existence of the privilege, the inadequacy of the record requires a ruling in favor of the Mallons on the privilege issue and the motion to compel discovery. Accordingly, we reverse the order and remand the cause for proceedings consistent with this opinion.

## Policy

The hospital maintains that our decision will, in effect, require hospitals "to create and fund a formal review 'organization'" and "discourage review and evaluation because it [will] increase administrative expenses." Although controlling health care costs is a

valid concern, it does not compel a different outcome in this case. We note that Wis. Adm. Code secs. HSS 124.10 and 124.11 require hospitals to "have in operation" written quality assurance programs and written utilization review plans. Committees established pursuant to these regulations may qualify as "organizations" under sec. 146.38(2), Stats. Therefore, we are not convinced that our decision will require the creation of yet another review organization and significantly increase the hospital's administrative costs.

The hospital also argues that our decision runs afoul of the legislature's intent to "provide broad protection for all information generated *within any review or evaluation*." (Emphasis added.) Were we writing on a clean slate, we would agree that the privilege created by sec. 146.38, Stats., is broader in scope than we have construed. But published opinions of the court of appeals have statewide precedential effect. Section 752.41(2), Stats. The privilege was significantly curtailed by the determination in *Moroney* that the review or evaluation had to be performed as part of an organized program and *Franzen's* definition of the term organization. Our construction of sec. 146.38 is consistent with those decisions.

*By the Court.*—Order reversed and cause remanded.