Roslyn L. BRAVERMAN, Plaintiff-Appellant,

v.

COLUMBIA HOSPITAL, INC., OHIC Insurance Company
and Wisconsin Patients Compensation Fund,
Defendants-Respondents,

Clay J. FRANK, M.D. and Physicians Insurance Com-
pany of Wisconsin, Defendants.

Court of Appeals

*No. 00–0901. Oral argument February 27, 2001.—Decided
April 11, 2001.*

## 2001 WI App 106

(Also reported in 629 N.W.2d 66.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert L. Jaskulski* of *Domnitz, Mawicke & Goisman, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Lori Gendelman, Paul J. Pytlik* and *Brett D. Stacey* of *Otjen, Van Ert, Lieb & Weir, S.C.* of Milwaukee.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. This is a medical malpractice case commenced by Roslyn L. Braverman against Columbia Hospital, Inc., its liability insurer and the Wisconsin Patients Compensation Fund (collectively, Columbia).[1] We previously granted Braverman's petition for leave to appeal a nonfinal protective order barring Braverman from discovering certain records relating to Columbia's quality assurance procedures. The trial court issued the protective order pursuant to WIS. STAT. § 146.38(2) (1999–2000)[2] which bars the release of the record of a review or evaluation conducted under a health care provider's quality assurance program.

¶ 2. Braverman raises three issues on appeal. First, she contends that her discovery request for Columbia's statistical data on its infection rates is not barred by WIS. STAT. § 146.38. Second, she contends that a report issued by the Wisconsin Department of Health and Family Services (Department) in conjunction with Columbia's quality assurance review is not barred by the statute. Third, she contends that the trial court erred by refusing to conduct an in camera review of the materials she sought by discovery. We agree with Braverman's first argument. We hold that Columbia's statistical data of infection rates is subject to discovery. We reverse that portion of the protective order. We reject the balance of Braverman's arguments and affirm the balance of the protective order. We remand for further proceedings.

---

[1] Braverman's original and amended complaints named additional defendants. However, the issues on appeal concern only Columbia, its liability insurer and the Wisconsin Patients Compensation Fund.

[2] All references to the Wisconsin Statutes are to the 1999–2000 version.

## FACTS

¶ 3. The facts of this case are not in dispute. We take them from Braverman's original and amended complaints and from the various affidavits filed by Columbia in support of its motion for a protective order.

¶ 4. On February 23, 1998, Braverman underwent surgery at Columbia Hospital for cervical spinal stenosis and left upper extremities polyradiculopathy. Subsequently, Braverman was diagnosed with a nosocomial infection. She was rehospitalized from March 6 through March 16, 1998, and again from March 31 through April 7, 1998, for treatment of the infection.

¶ 5. As mandated by WIS. ADMIN. CODE § HFS 124.08, Columbia maintains an Infection Control Committee (ICC). Its purpose is to influence and improve the quality of health care through the practice of infection control. The ICC recommends practices to reduce risk of infection to patients, visitors and health care workers. The ICC membership includes officers and members of the various departments within the hospital who meet on a monthly basis and are governed by a set of rules. Columbia's Hospital Infection Control Practitioners compile infection statistics. The ICC conducts an investigation or study of any postoperative infection for purposes of quality assurance. The ICC coordinates its infection control processes in compliance with the by-laws and rules of the medical staff in order to reduce the risk of hospital acquired infections in patients, visitors and health care workers.

¶ 6. Columbia's various medical departments have Medical Staff Committees. A subset of these committees is the Medical Council, which is also denominated the Quality Assessment and Quality

Improvement Committee. All of Columbia's medical staff departments report their quality assessment agenda deliberations to the Medical Council, which, in turn, makes recommendations and acts upon those deliberations.

¶ 7. On October 31, 1996, Judy Hintzman, Columbia's Infection Control Coordinator, requested Mary Proctor, a supervisor of the Communicable Disease Epidemiology Unit for the State of Wisconsin, Department of Health and Family Services, to review and evaluate Columbia's services for purposes of quality assurance. Proctor's ensuing report states that Hintzman's request was prompted by "[a] preliminary report investigating an increase in nosocomial infections following open heart surgery at Columbia Hospital [between] July 1 and October 29, 1996 . . . ."

## *PROCEDURAL HISTORY*

¶ 8. Braverman's original complaint alleged that Columbia was negligent in its treatment of her. Her second amended complaint added a claim that Columbia had failed to adequately inform Braverman under the law of informed consent. Columbia answered, denying the allegations.

¶ 9. Braverman followed with a series of interrogatories and document requests. Columbia objected on the grounds that some of the information sought by Braverman was a record of its review and evaluation procedures under WIS. STAT. § 146.38 and therefore was privileged pursuant to subsecs. (1m) and (2) of the statute. In its written decision, the trial court categorized the disputed material as follows: "(1) infection control materials, including meeting minutes, infection rates, and the results of any investigations conducted by quality assurance/peer review committees; (2) reports

and/or evaluations of the Joint Commission on Hospital Accreditation; and (3) information derived from a quality assurance investigation conducted in association with the Wisconsin Department of Health." Applying the court of appeals decisions in *State ex rel. Good Samaritan v. Moroney*, 123 Wis. 2d 89, 365 N.W.2d 887 (Ct. App. 1985), *Franzen v. Children's Hospital*, 169 Wis. 2d 366, 485 N.W.2d 603 (Ct. App. 1992), and *Mallon v. Campbell*, 178 Wis. 2d 278, 504 N.W.2d 357 (Ct. App. 1993), the court ruled that all three categories of materials were privileged.

¶ 10. Braverman appeals. We will discuss the trial court's ruling in greater detail as we discuss the various issues.

## STANDARD OF REVIEW AND GENERAL PRINCIPLES OF PRIVILEGE LAW

¶ 11. Generally, discovery disputes are addressed to the trial court's discretion. *Franzen*, 169 Wis. 2d at 376. We will uphold a discretionary decision if the trial court applied the relevant law to facts of record using a process of logical reasoning. *Id.* When the trial court's discretionary ruling is based on an error of law, the court has erred in the exercise of its discretion. *Id.*

¶ 12. However, in this case, the ultimate issue is the meaning of WIS. STAT. § 146.38 as applied to the undisputed facts. That exercise presents a question of law which we review de novo. *Briggs v. Farmers Ins. Exch.*, 2000 WI App 40, ¶ 14, 233 Wis. 2d 163, 607 N.W.2d 670, *review denied*, 234 Wis. 2d 178, 612 N.W.2d 734 (Wis. Apr. 26, 2000) (No. 99–1123). Despite our de novo standard, we value a trial court's decision

on the question. *Scheunemann v. West Bend,* 179 Wis. 2d 469, 475, 507 N.W.2d 163 (Ct. App. 1993). Here, although we disagree with one portion of the trial court's ruling, the court has nonetheless provided us with a helpful and thorough decision on the issues.

■

¶ 13. A party asserting a privilege carries the burden to establish the privilege. *Franzen,* 169 Wis. 2d at 386. We narrowly interpret privileges created by statute. *Id.* When determining whether a privilege exists, we inquire into the existence of the relationship upon which the privilege is based and the nature of the information sought. *Id.* The determination of privilege is one for the courts, not for the professionals involved. *Id.*

### WIS. STAT. § 146.38 AND THE CASE LAW

■

¶ 14. We set out the relevant portions of WIS. STAT. § 146.38 in the accompanying footnote.[3] The pur-

---

[3] WISCONSIN STAT. § 146.38 reads in part as follows:

**(1m)** No person who participates in the review or evaluation of the services of health care providers or facilities or charges for such services may disclose any information acquired in connection with such review or evaluation except as provided in sub. (3).

**(2)** All organizations or evaluators reviewing or evaluating the services of health care providers shall keep a record of their investigations, inquiries, proceedings and conclusions. No such record may be released to any person under s. 804.10(4) or otherwise except as provided in sub. (3). No such record may be used in any civil action for personal injuries against the health care provider or facility; however, information, documents or records presented during the review or evaluation may not be construed as immune from discovery under s. 804.10(4) or use in any civil action merely because they were so presented. Any person who testifies during or participates in the review or evaluation may testify in any civil action as to matters within his or her knowledge, but may

107

pose of the privilege created by § 146.38 is "to protect the confidentiality of the peer review process, in the hope that confidentiality would encourage free and open discussion, among physicians knowledgeable in an area, of the quality of treatment rendered by other physicians." *Moroney*, 123 Wis. 2d at 98. The review contemplated by the statute is intended to aid physicians on the hospital staff in maintaining and improving the quality of their work, and the review lies at the core of the protection afforded by the statute. *Id.*

¶ 15. In *Mallon*, the court of appeals held that quality assurance records are privileged under WIS. STAT. § 146.38 if two elements are satisfied. *Mallon*, 178 Wis. 2d at 287. First, the investigation must be part of a program organized and operated to improve the quality of health care at the hospital. *Id.* Second, the organization contemplated by the statute is a group with relatively constant membership, officers, a purpose and a set of regulations. *Id.*

¶ 16. In *Franzen*, the court of appeals further analyzed WIS. STAT. § 146.38, and set out a methodology for trial courts to follow when addressing a privilege question under § 146.38. The court addressed the three

not testify as to information obtained through his or her participation in the review or evaluation, nor as to any conclusion of such review or evaluation.

(3) Information acquired in connection with the review and evaluation of health care services shall be disclosed and records of such review and evaluation shall be released, with the identity of any patient whose treatment is reviewed being withheld unless the patient has granted permission to disclose identity, in the following circumstances:

. . . .

(d) In a report in a statistical form. The report may identify any provider or facility to which the statistics relate[.]

distinct categories of materials created by the statute and whether the privilege applied to each:

> We first note that the plain language of this section creates three distinct categories of materials: (1) a "record of [ ] investigations, inquiries, proceedings and conclusions," (2) "information, documents or records presented during the review," and (3) "matters within [a person's] knowledge." Materials in the first category are expressly protected from the discovery process. Materials in the second category are not protected by this subsection. Materials in the third categories are expressly made available in "any civil action."

*Franzen*, 169 Wis. 2d at 377–78 (footnote omitted).

■

¶ 17. *Franzen* took particular note that WIS. STAT. § 146.38(2) recognizes two distinct kinds of records: (1) records of the investigations, inquiries, proceedings and conclusions; and (2) records presented during the review or evaluation. *Franzen*, 169 Wis. 2d at 378–80. Since the former are privileged whereas the latter are not, *Franzen* held that a trial court must distinguish between the two. *Id.* at 381. The trial court performs this task by making three distinct findings of fact:

> (1) identify those individuals preparing a record in order to determine if they are either evaluators or members of an organization "reviewing or evaluating services,"

> (2) determine if a record pertains to an investigation, inquiry, proceeding or conclusion of the evaluator or organization identified in step one,

(3) determine if a record was *presented to* the evaluator/organization or *was kept by* the evaluator/organization.

*Id.* at 381–82 (footnote omitted).

¶ 18. In this case, the trial court applied the *Mallon* and *Franzen* tests to the three categories of disputed materials. We do not read Braverman's appellate briefs or her presentation at oral argument to quarrel with the trial court's application of the *Mallon* and *Franzen* tests, *assuming that WIS. STAT. § 146.38(2) applies*. Rather, Braverman's arguments are more fundamental. She contends that Columbia's statistical data of infection rates is not covered by the statute. And even if this data is covered, Braverman contends that it is exempted from the privilege by virtue of para. (3)(d). Braverman similarly argues that the statute does not apply to the Department or the report it issued. In addition, Braverman contends that the trial court was required to conduct an in camera inspection of the materials she sought by discovery.

## DISCUSSION

### 1. Statistical Data of Infection Rates

¶ 19. Braverman sought Columbia's statistical data regarding the rates of infection for postoperative patients from the year 1990 to the date of her discovery request. Columbia does not deny that this information exists. In her response to one of Braverman's interrogatories, Judy Hintzman, Columbia's Infection Control Coordinator, acknowledged that the hospital's infection control surveillance plan provides for the monitoring of infection rates. And in her affidavit in support of Columbia's protective order, Hintzman

stated that the hospital's infection control practitioners compile infection statistics.

¶ 20. Braverman first argues that this kind of statistical data is not even covered by WIS. STAT. § 146.38. But we do not address this argument because we conclude that such information is exempt from the privilege pursuant to para. (3)(d). This provision reads:

> **(3)** Information acquired in connection with the review and evaluation of health care services *shall be disclosed* and records of such review and evaluation *shall be released*, with the identity of any patient whose treatment is reviewed being withheld unless the patient has granted permission to disclose identity, in the following circumstances:
>
> . . . .
>
> (d) *In a report in statistical form.* The report may identify any provider or facility to which the statistics relate[.] (Emphasis added.)

¶ 21. We see this language as clear and unambiguous. And since Columbia's statistical data qualifies under the paragraph, we conclude that Braverman is entitled to discover this data.

¶ 22. Columbia disagrees. It argues that WIS. STAT. § 146.38(3)(d) is rendered ambiguous when considered in light of the entire statute. *See State v. Williams*, 198 Wis. 2d 516, 527, 544 N.W.2d 406 (1996) ("Subsections of a statute must be interpreted in a manner consistent with the purpose of the statute as a whole . . . . 'A statute should be construed to give effect to its leading idea, and the entire statute should be brought into harmony with the statute's purpose.' "). Columbia argues that the exemption set out in para. (3)(d) collides with the privilege otherwise conferred by the statute and therefore the statute is ambiguous. Columbia then turns to certain legislative history,

which, according to Columbia, reveals that the exemption for statistical data set out in para. (3)(d) was not intended as a full-blown exception to the privilege otherwise created by the statute. Instead, Columbia contends that the exception was intended to apply only to data sharing between professional standards review organizations and health care system agencies.

¶ 23. We have no quarrel with Columbia's argument that we should construe the subsections of a statute in light of the purpose of the statute as a whole. But that does not allow us to rewrite a statute which is otherwise plain and unambiguous on its face. The legislature routinely enacts laws that recite a general rule followed by exceptions. Such action, standing alone, does not render the exception, or the statute, ambiguous. While we can look to legislative history to confirm that a statute is unambiguous, we are not at liberty to do so in the face of language which is clear and unambiguous. *State v. Martin*, 162 Wis. 2d 883, 897 n.5, 470 N.W.2d 900 (1991). "[W]e presume the legislature chose its terms carefully and with precision to express its meaning." *Landis v. Physicians Ins. Co.*, 2000 WI App 164, ¶ 9, 238 Wis. 2d 190, 616 N.W.2d 910, *review granted*, 239 Wis. 2d 308, 619 N.W.2d 91 (Wis. Sept. 14, 2000) (No. 00–0330). Columbia's argument also runs afoul of the maxim that privileges created by statute are to be narrowly construed. *Franzen*, 169 Wis. 2d at 386. That is all the more reason to respect the clear language of the exemption that the legislature has set out in WIS. STAT. § 146.38(3)(d).

¶ 24. We recognize that we may not apply the ordinary and accepted meaning of the language in a statute if it leads to an absurd result. *Seider v.*

*O'Connell,* 2000 WI 76, ¶ 32, 236 Wis. 2d 211, 612 N.W.2d 659. However, we see nothing absurd about the legislature choosing to exempt statistical data from the general rule of privilege otherwise conferred on the record of a quality assurance procedure under WIS. STAT. § 146.38. While we need not speculate about this legislative choice, it may have come about because the legislature recognized that litigants such as Braverman would have a need for such data, particularly in an informed consent case such as this. Regardless, our role is not to justify the legislative action or to substitute our judgment for that of the legislature. Rather, our role is to examine and interpret the legislative language. And if that language is plain on its face, we are not free to rummage in the legislative history to change the meaning.

¶ 25. In summary, Columbia's remedy lies with the legislature. "If a statute fails to cover a particular situation, and the omission should be cured, the remedy lies with the legislature, not the courts." *Michael T. v. Briggs,* 204 Wis. 2d 401, 410, 555 N.W.2d 651 (Ct. App. 1996) (citation omitted).

¶ 26. We hold that Braverman is entitled to discover this statistical data. We reverse this portion of the protective order.

### 2. Report of the Wisconsin Department of Health and Family Services

¶ 27. Braverman also sought discovery of the report generated by the Wisconsin Department of Health and Family Services. This report was the result of Judy Hintzman's request on behalf of Columbia that the Department review and evaluate Columbia's infection quality assurance in light of the increase in

nosocomial infections following certain types of surgeries. After applying the *Mallon* and *Franzen* tests, the trial court concluded that the Department's report was privileged.[4]

¶ 28. As noted earlier, we do not read Braverman to dispute the trial court's determination that the Department qualifies as an "organization" under the *Mallon* test or the court's factual findings under the *Franzen* methodology. Rather, Braverman's argument is more fundamental. She contends on a threshold basis that WIS. STAT. § 146.38 does not apply to the Department or the report it issued. Instead, Braverman says that other statutes which speak specifically to the Department govern the question of whether she may discover the Department's report.

¶ 29. WISCONSIN STAT. § 15.19 creates the Department. WISCONSIN STAT. § 250.03 assigns certain responsibilities to the Department. WISCONSIN STAT. § 250.04(1) confers authority on the Department to "investigate the cause and circumstances of any special or unusual disease." Section 250.04(3)(b) says that the Department "shall analyze occurrences, trends and patterns of acute, communicable or chronic diseases . . . and *distribute information based on the analyses.*" (Emphasis added.) Braverman contends that these statutes collectively, and § 250.04(3)(b) in particular, demonstrate that the records of the Department are subject to disclosure. Braverman also contends that by utilizing the services of the Department, a public

---

[4] Despite the trial court's ruling, Braverman nonetheless obtained a copy of the report directly from the Department. Therefore, it may be that this issue is moot. Nonetheless, we choose to answer the issue on the merits because our discussion, although limited to discovery, may have some bearing on the admissibility of the report at the trial.

entity, Columbia should have expected that the results of any investigation by the Department would be subject to disclosure.[5]

■

¶ 30. This issue requires us to decide which law applies to the Department's report—the privilege provisions of WIS. STAT. § 146.38 or the relevant provisions of WIS. STAT. ch. 250. We conclude that § 146.38 is the controlling statute because it is the more specific in this setting. "Where a general statute conflicts with a specific statute, the specific statute prevails." *Landis*, 2000 WI App 164 at ¶ 16. While the relevant provisions of ch. 250 recite the responsibilities and authority of the Department, they do not speak to a situation where the Department is invited by a health care provider to assist in a quality assurance review under § 146.38. Nor do any of the relevant statutes in ch. 250 address any privilege implications resulting from such assistance.[6]

¶ 31. Instead, those matters are specifically addressed in WIS. STAT. § 146.38. That statute clearly envisions entities beyond the health care provider itself participating in the review and evaluation process. Section 146.38(1m) says, "No person who participates in the review or evaluation of the services of health care providers or facilities or charges for such services may disclose any information acquired in con-

---

[5] Braverman also cites to the Open Records Law, Chapter 19, Subchapter II in support of her argument.

[6] The closest that WIS. STAT. ch. 250 comes to this topic is WIS. STAT. § 250.04(6) which authorizes the Department to "provide consultation, technical assistance and training regarding public health to local health departments, community organizations *and others*." (Emphasis added.) But this statute is silent as to privilege.

nection with such review or evaluation except as provided in sub. (3)." The language "[n]o person" is extremely broad and would certainly include an agency such as the Department. And the language contemplating "charges for such services" additionally reveals that the legislature anticipated outside entities assisting in the review or evaluation. Finally, we note that § 146.38 does not contain any language suggesting that the statute does not govern the Department or any other state agency.

¶ 32. In summary, we conclude that WIS. STAT. § 146.38 is the specific statute that applies under the facts of this case. We affirm the trial court's ruling that Braverman was not entitled to discover the Department's report.

### 3. *In Camera Inspection*

¶ 33. Braverman argues that the trial court was obligated to conduct an in camera inspection of the materials she sought. Braverman contends that the trial court cannot perform a meaningful *Franzen* analysis absent such an inspection. A request to conduct an in camera inspection is addressed to the trial court's discretion. *Appleton Post-Crescent v. Janssen*, 149 Wis. 2d 294, 302–03, 441 N.W.2d 255 (Ct. App. 1989).

¶ 34. Braverman first argues that both *Moroney* and *Franzen* mandate an in camera inspection. True, the *Moroney* court upheld the trial court's directive that the chairperson of the Wisconsin Patients Compensation Panel review certain of the records in camera to determine whether the materials were privileged. *Moroney*, 123 Wis. 2d at 100–01. However, unlike this case, the health care provider in *Moroney* did not claim that the discovery request facially sup-

ported the privilege. *Id.* at 101. Rather, the health care provider's argument was that the panel chairperson, who also served as a member of the panel, would be prejudiced by exposure to material that ultimately might be ruled inadmissible. *Id.* The court of appeals rejected that argument. In short, the argument made by Braverman in this case was not before the court in *Moroney*.

¶ 35. Nor was Braverman's argument before the court in *Franzen*. There, the trial court had conducted an in camera inspection. *Franzen*, 169 Wis. 2d at 374. After the court of appeals analyzed WIS. STAT. § 146.38 and set out the methodology for a trial court to follow when addressing a privilege question under the statute, the court of appeals directed the trial court to resume that procedure on remand. *Franzen*, 169 Wis. 2d at 384. However, the court of appeals did not announce that an in camera inspection was essential to the analysis in every instance. More importantly, the methodology set out by the *Franzen* court does not mention an in camera procedure. *Franzen* does not support Braverman's argument.

¶ 36. Instead, the controlling case on this issue is *Ollman v. Health Care Liability Insurance Plan*, 178 Wis. 2d 648, 505 N.W.2d 399 (Ct. App. 1993). There, the plaintiff sought to discover a letter reciting the conclusions of the board of inquiry that had conducted an inquiry under WIS. STAT. § 146.38. *Ollman*, 178 Wis. 2d at 667–68. The court acknowledged that

> where discovery requests "do not, on their face, request materials and information which fall under the protection of sec. 146.38," but the party upon whom the discovery request was made, nonetheless,

117

objects to producing the document, an *in camera* inspection of the document should be utilized to sort out privileged materials.

*Ollman*, 178 Wis. 2d at 669–70 (citation omitted). However, the court went on to say that where the discovery request, "on its face," seeks information that is clearly protected by § 146.38, the trial court is not required to conduct an in camera inspection. *Ollman*, 178 Wis. 2d at 670. Because the discovery request on its face sought the conclusions of the board of inquiry, the court held that the letter was privileged under § 146.38. *Ollman*, 178 Wis. 2d at 670.

¶ 37. Therefore, under *Ollman*, our focus is on the materials sought in Braverman's discovery request. As described by the trial court, Braverman sought: "(1) infection control materials, including meeting minutes, infection rates,[7] and the results of any investigations conducted by quality assurance/peer review committees; (2) reports and/or evaluations of the Joint Commission on Hospital Accreditation; and (3) information derived from a quality assurance investigation conducted in association with the Wisconsin Department of Health." On their face, these discovery requests sought the "record of [Columbia's] investigations, inquiries, proceedings and conclusions" under WIS. STAT. § 146.38(2).

¶ 38. Braverman's argument that only an in camera inspection by the trial court will assure a meaningful *Franzen* analysis leap frogs the first level of the inquiry under *Ollman*—whether the discovery request is facially sufficient to support the opposing

---

[7] We have previously held in this opinion that Braverman is entitled to discover Columbia's statistical reports regarding the infection rates under the exemption created in WIS. STAT. § 146.38(3)(d).

party's invocation of the privilege. *Ollman*, 178 Wis. 2d at 670. Instead, Braverman would shift the initial burden to the trial court to sift and winnow through the material sought. We reject that approach. While the burden to demonstrate a privilege is on the party asserting it, *Franzen*, 169 Wis. 2d at 386, the burden to frame a proper discovery demand logically lies with the party making such demand.

¶ 39. Our holding does not leave Braverman without a meaningful ability to conduct discovery. This is because WIS. STAT. § 146.38(2) allows discovery of evidence that is not subject to the privilege conferred by the statute:

> No such record may be used in any civil action for personal injuries against the health care provider or facility; *however, information, documents or records presented during the review or evaluation may not be construed as immune from discovery under s. 804.10(4) or use in any civil action merely because they were so presented.* (Emphasis added.)

Braverman should have worded her discovery requests to target this material. Instead, she filed discovery requests that invaded the privilege of § 146.38, and, as a result, she seeks to burden the trial court with the task of ferreting out what is privileged and what is not. Braverman has the cart before the horse. Her obligation was to make a discovery request which did not facially establish Columbia's privilege. Had she filed a proper request, and if Columbia still claimed privilege, then the trial court may well have been required to conduct an in camera review.[8]

---

[8] Although not germane to this case, we observe that WIS. STAT. § 146.38(2) also provides that

¶ 40. We hold that the trial court did not err in the exercise of its discretion when it chose not to conduct an in camera inspection of the materials sought by Braverman.

## *CONCLUSION*

¶ 41. We reverse that portion of the protective order that barred Braverman from discovering Columbia's statistical reports of infection rates. We affirm that portion of the protective order that barred Braverman from discovering the report furnished by the Wisconsin Department of Health and Family Services. We affirm the trial court's rejection of Braverman's request that the court conduct an in camera inspection of the materials sought by Braverman.

¶ 42. Costs are not awarded.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.

---

> [a]ny person who testifies during or participates in the review or evaluation may testify in any civil action as to matters within his or her knowledge, but may not testify as to information obtained through his or her participation in the review or evaluation, nor as to any conclusion of such review or evaluation.

This preserves Braverman's ability to obtain the testimony, by deposition or otherwise, of persons who have relevant testimony on her claim. Besides the "escape hatches" of § 146.38, Braverman also has all of the other conventional discovery tools available to her.