COURT OF APPEALS
DECISION
DATED AND FILED

June 1, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP692-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2014CF1068

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROBERT C. STRYKER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: RALPH M. RAMIREZ and JENNIFER R. DOROW, Judges. *Affirmed*.

Before Gundrum, P.J., Neubauer and Kornblum, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Robert C. Stryker appeals a judgment of conviction for one count of possession of child pornography.   He also appeals an order denying his postconviction motion, in which he alleged that the circuit court erroneously denied his motion to suppress evidence discovered on his laptop computer by police after his wife allowed them to search it.   He contends his wife did not have authority to consent to the search.   He also contends that his trial counsel was constitutionally ineffective for failing to seek suppression of a document discovered on his laptop on the grounds that it was privileged under the social worker-patient privilege codified in WIS. STAT. § 905.04 (2019-20).[1]   We conclude the circuit court properly denied Stryker's suppression motion and his postconviction motion.   We affirm.

## BACKGROUND

¶2      In August 2014, Stryker's neighbors reported to City of Waukesha Police that Stryker, then forty-one years old, had tried to kiss their sixteen-year-old daughter.   Stryker's wife, AS, learned of this incident on August 27 and sent a text to Stryker telling him to take his belongings and leave their home.   Stryker removed some personal property from their home but left a laptop computer that he used in the basement.   Two days later, Detective Kenny Stucker went to the home to speak with AS.

¶3      AS told Stucker that Stryker had admitted to her in 2010 that he had an addiction to child pornography and that he had removed hard drives from his computer and smashed them after visiting a website monitored by the police.   AS

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

also told Stucker that Stryker had recently admitted to viewing child pornography within the past two years during a family counseling session the Strykers attended after AS filed for divorce in July 2014.

¶4 In response to a question from Stucker, AS indicated there were multiple computers in the home, including the laptop. The laptop was located in the children's play area of the basement. It was not in a locked container and was accessible to anyone in the home. According to AS, Stryker used the laptop and AS would sometimes help the children use it to watch Netflix. AS did not use the laptop except when helping the children with it or when she and Stryker would review their finances. She had her own computer but could have used the laptop at any time if she wanted. AS had "complete access" to any files on the laptop and there were no limitations imposed on her use of the laptop.

¶5 AS retrieved the laptop for Stucker from the basement and turned it on at his request. She did not have to use a password to get into the computer. Stucker then reviewed a form with AS, which she signed, authorizing him to take the computer, "forensically download" its contents, and search them. The form granted Stucker "permission … to conduct a complete search of [AS's] … premises, property, and buildings" and specifically identified the laptop, two computer hard drives, and another personal computer as items to be searched. It further gave Stucker permission to take from AS's home "any letters, papers, materials … or any other types of property or objects which they desire as evidence for criminal prosecution in the case or cases under investigation." Stucker took the laptop, personal computer, and hard drives and turned them over to Detective David Feyen to be searched.

¶6      Feyen made an image of the laptop's hard drive and loaded the image onto a "blank completely wiped hard drive, which was identical in size." He then performed a forensic examination of the laptop and located sixty-four thumbcache images depicting potential child pornography, including five pornographic images of prepubescent girls. Like the laptop itself, the images were not password protected, although they were "hidden" and could only be viewed with specialized software. When asked about his characterization of the thumbcache files as "hidden," Feyen explained that "Windows protects us from destroying the Windows operating system by deleting files that are necessary to operate the system. So Windows by default hides thumbcaches and other file systems that it needs to operate so we can't access them."

¶7      Feyen also used the image copy of the hard drive to "back the computer up in time and find documents that had been previously deleted." One such document he located was a Microsoft Word document entitled "Inventory.doc" that required a password to open. At the suppression hearing, Feyen testified that the password to open the document "was passed on to me by [AS]." He stated that AS gave the police "a list of generic passwords used by the family for multiple things, and I was able to enter that password and bypass the pop-up box." He did not remember exactly when AS provided the password list, however, nor the officer to whom she provided it. Feyen testified that he did not use "password cracker" software to access the document.

¶8      The Inventory document contains descriptions of Stryker's "struggles with child pornography addiction," his efforts to seek treatment, attending support meetings, and obtain a sponsor. The file ends with the words "I am fully committed to proceeding in recovery. This personal sexual inventory is one of these initial steps." At Stryker's sentencing hearing, his trial counsel stated

4

that Stryker's therapist asked Stryker to prepare the document as part of his treatment process.

¶9    Stryker was charged with five counts of possession of child pornography based on the images found on the laptop.

## PROCEDURAL HISTORY

¶10    Stryker's trial counsel moved to suppress the five images and the password-protected Inventory document on the grounds that AS did not have the authority to permit police to search the laptop.

¶11    The circuit court denied Stryker's motion at a hearing held on June 24, 2015.[2]  After summarizing relevant portions of the testimony of AS and Stucker and Feyen, the court concluded that AS had consented to a forensic search of the entire laptop to locate child pornography.  The court found that AS had "unfettered access" to the laptop after Stryker voluntarily left it at the home, that the children had previously used it, and that there had been "mutual use" and "joint control" of the laptop by Stryker and AS.  Based on these factual findings, the court concluded that AS had authority to consent to a search of the laptop, that she did so voluntarily, and that the search was "specific to the allegations" of possession of child pornography that the police were investigating.  The court did not make a specific finding about whether AS had actual or apparent authority.

¶12    Regarding the Inventory document, the circuit court found that although the document was the only password-protected file on the laptop, it was "protected by a family password, one known to [AS] and, therefore, not

---

[2]  Judge Kathryn W. Foster denied the motion.

particularly protected under all of the circumstances." The court further found that AS provided an officer with list of common family passwords, one of which Feyen used to open the document. Based on these findings, the court concluded that AS had authority to consent to a search of the document as well.

¶13 After a new judge took over the case, Stryker filed a motion for reconsideration which was heard on December 18, 2015.[3] Feyen testified a second time regarding the Inventory document at the hearing. He testified that he found the document while searching the laptop for files that had been previously deleted. He again reiterated that he did not use password cracking software to open the document. Feyen stated that when the computer asked for a password, he telephoned AS and asked about any passwords that were used in the home. He testified further that the password that opened the document "had something to do with the Brewers, as in the Milwaukee Brewers" but did not recall how many characters in length it was or the exact characters that comprised the password. Finally, Feyen confirmed that he did not use a "variation" of one of the family's passwords to open the document.

¶14 Stryker's counsel argued that the search for the Inventory document was unlawful because Stryker had used a password to limit access to the document and had deleted it from the laptop. Counsel also emphasized that AS did not know of the document's existence when she consented to the search and that Stryker had "almost exclusive access to" the laptop.

¶15 The circuit court denied the motion for reconsideration after concluding that AS had actual authority to consent to the search of the laptop and

---

[3] Judge Ralph M. Ramirez ruled on the motion for reconsideration.

its files.[4]  The court found that all members of the Stryker family had access to the laptop.  The court again emphasized that a password supplied by AS had opened the Inventory document, not a variation of one of the family's passwords:  "It's not that [Feyen] was told it has something to do with the Brewers, and then he added Brewers123 or Brewers123 with an exclamation point."  AS had the ability to access anything on the laptop and thus the scope of her authority extended to all of its contents.

¶16    Stryker later pled guilty to one count of possession of child pornography.[5]  After sentencing, Stryker filed a motion for postconviction relief asserting that (1) the five images and Inventory document should have been suppressed; (2) his trial counsel was ineffective for not further cross-examining Feyen about alleged discrepancies in his testimony at the two hearings; and (3) his trial counsel was ineffective because he had not argued that the Inventory document was privileged under WIS. STAT. § 905.04.

¶17    At the *Machner* hearing, Stryker's trial counsel testified that he had not considered raising a privilege argument regarding the Inventory document.[6]  Trial counsel further explained that he considered the document to be a

---

[4]  The circuit court inaccurately described the motion before it as a motion to suppress rather than a motion for reconsideration.  The court also stated that it had reviewed the transcript of the suppression hearing but not Judge Foster's oral ruling which it was being asked to reconsider.  We note this discrepancy because a defendant moving to reconsider a previous ruling carries a heavier burden than on a motion to suppress.  *State v. White*, 2008 WI App 96, ¶8, 312 Wis. 2d 799, 754 N.W.2d 214 ("To prevail on a motion for reconsideration, a party must either present newly discovered evidence or establish a manifest error of law or fact.").  We understand from the circuit court's conclusion that AS had actual authority to consent to the search of the laptop that Stryker could not satisfy the heavier burden applicable on reconsideration.

[5]  Judge Ramirez entered the judgment of conviction following Stryker's plea.

[6]  Judge Jennifer R. Dorow ruled on Stryker's two postconviction motions.

"confession" of Stryker's "history leading up to becoming sexually attracted to children." In discussing his conversations with Stryker about the document, trial counsel explained that Stryker "had been seeing a counselor at Pathways Counseling that lead him to producing this document." Specifically, Stryker explained to his trial counsel that "he had typed it up and it was something he was supposed to do as part of his therapy." But trial counsel could not "testify to whether this was like a back and forth between him and the therapist or anything like that. I don't remember."

¶18 Setting the Inventory document aside, trial counsel testified that both he and Stryker did not believe "this was a particularly strong case to go to trial." Trial counsel had hired an expert to examine the laptop but the expert could not "say [there was] no evidence of accessing child pornography." In addition, Stryker faced numerous other issues, including (1) his history of destroying computer hard drives; (2) his prior statements to AS about his interest in child pornography; (3) his attempt to kiss the neighbors' minor daughter; and (4) another criminal proceeding in which Stryker was charged with sexually assaulting a child.[7]

¶19 The circuit court denied Stryker's postconviction motion. As to the suppression issue, the circuit court concluded that neither of the judges who had examined that issue before Stryker's plea had erroneously exercised their discretion in denying Stryker's motions. With respect to the Inventory document in particular, the court reiterated that there was no evidence that Feyen used a

---

[7] Stryker was convicted of the sexual assault charge after a jury trial and we affirmed the conviction on appeal. *State v. Stryker*, No. 2020AP1482, unpublished slip op. (WI App Dec. 29, 2021).

"password cracker" rather than receiving a shared password from AS. For example, the court noted that there was no evidence to show that the password which opened the document was not one of the family's commonly-used passwords.

¶20 Regarding the ineffective assistance of counsel claims, the court reviewed trial counsel's multiple attempts to suppress the items found on the laptop, describing his efforts as "thorough." Turning to Feyen's testimony, the court declined to disturb the prior courts' implicit findings that he was credible. The court also found that trial counsel's efforts did not prejudice Stryker because trial counsel was able to (1) secure a plea that resulted in the dismissal of four of the five originally charged counts of possession of child pornography and (2) negotiate away the mandatory minimum sentence. The circuit court also concluded that the ineffective assistance claim based on privilege was not adequately developed because Stryker had simply assumed without analysis that the Inventory document was privileged.

¶21 Stryker's postconviction counsel filed a notice of appeal but we subsequently allowed counsel to withdraw and Stryker to file a new postconviction motion pro se. In his new motion, Stryker raised three claims, including his ineffective assistance claim premised on his trial counsel's failure to argue that the Inventory document was privileged under WIS. STAT. § 905.04. With this second motion, Stryker filed an affidavit from a social worker stating that Stryker had entered treatment in 2010 and remained in treatment for approximately two years. The affidavit stated further that "[a]s part of his treatment under my care, [Stryker] prepared and provided me with a 9-page printout describing his very personal history, including his sexual history" which

the social worker believed to be the same as the Inventory document found on the laptop.[8]

¶22    Stryker also filed a "Motion to Destroy Confidential Information" contained in the Inventory document and two motions seeking to seal or redact portions of certain hearing transcripts and other materials discussing the Inventory document.

¶23    The circuit court denied Stryker's second postconviction motion. The circuit court deemed the counselor's affidavit sufficient to suggest grounds for an ineffective assistance claim but concluded that Stryker had not followed it up with testimony or other evidence to actually prove the document was privileged:

> [Stryker] makes a claim that that document is privileged information under 905.03 [sic].   In support of this, Mr. Stryker does provide an affidavit from … Roger Northway, a licensed counselor from an organization called Pathways Counseling.
>
> As I stated earlier, though, affidavits and assertions in affidavits, those are part of the prima facie standards the Courts look at to determine whether there's even a cognizable claim to get you in the door to that *Machner* hearing.
>
> So what I don't have before this Court is, frankly, just as important as what I do have.   Because I do not have testimony from Mr. Northway or anyone from his organization about that document and whether it truly does fall under the social worker—patient privilege.
>
> I didn't even have any testimony by Mr. Stryker or any treatment provider regarding the origin of that document, why that document was created, when that document was created, the purpose for that document, the audience for that document.

---

[8] The state and Stryker agreed that the circuit court could consider the record of the evidentiary hearing held in connection with Stryker's first postconviction motion when deciding his second motion.

These are assertions, and for this Court to make a finding that it is a privileged document would require this Court to engage in speculation.

¶24 The court also described as speculative Stryker's assertion that he was prejudiced because absent the items found on the laptop he would not have pled guilty. The circuit court incorporated by reference its findings from its prior ruling denying Stryker's first postconviction motion, which were based in part on Stryker's trial counsel's testimony regarding the weaknesses in Stryker's case and his success in negotiating a plea which resulted in the dismissal of four of the five counts and elimination of the mandatory minimum sentence.

¶25 The circuit court also denied Stryker's motions to seal and to destroy confidential information except that it did agree to seal the Inventory document. Stryker appeals.

## DISCUSSION

### *Consent to Search*

¶26 Stryker challenges the circuit court's denial of his motion to suppress. This challenge presents a question of constitutional fact, which we review under two different standards. *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120. We uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.* We then apply the law to those facts de novo. *Id.*

¶27 The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." We generally have applied our state constitutional

11

protections in the same way as the United States Supreme Court has applied the protections under the Fourth Amendment. *State v. Sobczak*, 2013 WI 52, ¶11 n.4, 347 Wis. 2d 724, 833 N.W.2d 59.

¶28 Warrantless searches are presumed to be unreasonable but "that presumption may be overcome under certain circumstances." *State v. Torres*, 2018 WI App 23, ¶15, 381 Wis. 2d 268, 911 N.W.2d 388 (citation omitted). One such circumstance is when the police "receive[] consent for the search by an authorized individual." *Id.* Consent for a search may be given by someone who is not the subject of the search—a third party. *Id.*, ¶17 (citation omitted). Consent to a search of another's property may be given where the third party shares "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974)). Whether a third party has the common authority to consent to a search rests "on mutual use of the property by persons generally having joint access or control for most purposes." *Matlock*, 415 U.S. at 171 n.7. "We look to the sufficiency of the consenting individual's relationship to the premises to determine mutual use by persons generally having joint access or control for most purposes." *Torres*, 381 Wis. 2d 268, ¶17 (citation omitted). "The authority of the third party may be either actual or apparent, as long as, in the case of apparent authority, reliance on the authority is reasonable." *Id.*, ¶19. Common authority to consent to a search must be proven by the State through clear and convincing evidence. *State v. Abbott*, 2020 WI App 25, ¶15, 392 Wis. 2d 232, 944 N.W.2d 8.

¶29 In analyzing whether a third party has authority to consent to the search of the contents of a computer, "courts typically examine several factors— whether the consenting party in fact used the computer, whether it was located in a common area accessible to other occupants of the premises, and—often most

importantly—whether the defendant's files were password protected." ***United States v. Clutter***, 674 F.3d 980, 984 (8th Cir. 2012); *see also* ***Sobczak***, 347 Wis. 2d 724, ¶31 (third party had authority to consent to search of laptop where defendant had given third party permission to use it without limitation, third party used computer in common area of defendant's house, and no files inspected were password protected); ***State v. Ramage***, 2010 WI App 77, 325 Wis. 2d 483, 784 N.W.2d 746 (upholding seizure of two computers pursuant to consent from defendant's roommate where defendant allowed roommate to use both computers and neither required password to access).

¶30 The record here supports the conclusion that AS had actual authority to consent to the search of the laptop. The laptop was located in the children's play area of the basement of AS's home, which she had shared with Stryker. Stryker had recently moved some of his belongings out of the house but had left the laptop in the basement. The laptop was not password protected and was not stored in a locked container. Although Stryker was the primary user of the laptop, AS had used it to help their children start Netflix movies. AS and Stryker also used the laptop to work on the family budget together. Stryker had never prohibited AS from using the laptop and she had "complete access" to any files stored on it. These facts establish that AS and Stryker each used the laptop and had "joint access or control" over it "for most purposes." ***State v. Sobczak***, 347 Wis. 2d 724, ¶31.

¶31 Stryker's arguments to the contrary are not persuasive. First, he "effectively concede[s]" that AS had authority to consent to a search of the laptop but contends that she lacked authority to consent to searches of the thumbcache images because they were "hidden" and could not be accessed without special software. Stryker cites no Wisconsin authority for the proposition that, where a

13

computer is at issue, the relevant unit of search is each file stored on the computer as opposed to the computer itself. But even if it were appropriate to examine a third party's authority to consent on a file-by-file basis, AS's lack of access to the thumbcache images did not result from any efforts on Stryker's part. There is no evidence that Stryker encrypted those files and Feyen testified that they were not password protected. We decline Stryker's invitation to graft an intent on his part to exclude others from accessing the thumbcache files onto the normal functioning of the laptop's operating system.

¶32     Stryker next contends that AS lacked authority to consent to a search of the Inventory document, which was password protected. "[I]gnorance of a computer password may demonstrate a lack of authority under some circumstances. Like a lock on a briefcase or storage trunk, password protection on a computer demonstrates the owner's affirmative intent to limit access to its contents." *United States v. Wright*, 838 F.3d 880, 886 (7th Cir. 2016). Here, however, the circuit court found that AS provided the police with a list of "generic passwords used within the household on their multiple computers," and that one of them opened the document. By using a password known to others in the home, Stryker "assumed the risk that the other[s] would allow the police" to open the document. *United States v. Thomas*, 818 F.3d 1230, 1242 (11th Cir. 2016).[9]

¶33     Stryker contends that the circuit court's finding that Feyen opened the document with one of the family's generic passwords was clearly erroneous because Feyen provided "contradictory accounts" of how he accessed the

---

[9] This also distinguishes the present case from a case Stryker cites repeatedly, *Trulock v. Freeh*, 275 F.3d 391, 403 (4th Cir. 2001), in which an assistant was found not to have authority to consent to a search of her superior's password-protected files on a computer they both used because the assistant did not know her superior's passwords.

14

document at the suppression hearing and the hearing on Stryker's motion for reconsideration. A finding of fact is "clearly erroneous" if it is "against the great weight and clear preponderance of the evidence." ***State v. Dumstrey***, 2016 WI 3, ¶13, 366 Wis. 2d 64, 873 N.W.2d 502.

¶34 At the suppression hearing, Feyen testified that he "believed" the password to open the document came from AS though he did not obtain it directly from her. However, when asked if one of the passwords AS provided worked or if he "had to use a variation of one of the ones she provided," Feyen responded, "I don't remember how it happened." At the hearing on Stryker's motion to reconsider, Feyen testified that he had in fact contacted AS to obtain the family passwords and that he did not use a "variation" of one of those passwords to open the document. Though there is some inconsistency between Feyen's lack of definitive recall on these points at the first hearing and his more definitive recollection at the second hearing, we cannot say that the circuit court's finding that a family password was used to open the document is contrary to the great weight and clear preponderance of the evidence. ***Dumstrey***, 366 Wis. 2d 64, ¶13. Notably, Stryker points to no testimony or evidence in the record which tends to show that one of his family's generic passwords was *not* the correct password for the document. The record before the circuit court contained evidence to support its finding, which is enough for us to sustain it. ***State v. Wiskerchen***, 2019 WI 1, ¶30, 385 Wis. 2d 120, 921 N.W.2d 730 ("We search the record not for evidence opposing the circuit court's decision, but for evidence supporting it.").

¶35 Stryker also emphasizes that the Inventory document was deleted and had to be restored by Feyen in order to be opened, which in his view proves that AS could not access (and thus did not have authority over) it. As with the thumbcache images, however, the fact that AS may not have been able to pull up

the document on the laptop does not mean that she lacked common authority over the laptop and therefore the ability to validly consent to a search of its contents.

¶36 Finally, Stryker contends that he had a reasonable expectation of privacy in the Inventory document even if AS knew the password that opened it due to the "extremely personal" nature of its contents. While we do not disagree with that characterization of the document, the fact remains that (1) the document was retrieved from a laptop that was used by other members of Stryker's family; (2) Stryker left the laptop in an area of his home where it was accessible to anyone; (3) AS had unfettered access to the laptop and its contents; and (4) Stryker attached a password to the document that was known to AS. These circumstances are sufficient to confer actual authority on AS to consent to the search that uncovered the document regardless of its personal nature.

### Ineffective Assistance

¶37 Stryker also appeals the circuit court's denial of his ineffective assistance claim based on the social worker privilege statute. "To prevail on an ineffective assistance claim, a defendant must establish both that counsel performed deficiently and that the deficient performance prejudiced the defense." *State v. Jacobsen*, 2014 WI App 13, ¶13, 352 Wis. 2d 409, 842 N.W.2d 365 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Both the showing of deficient performance and prejudice are necessary to proving a claim of ineffective assistance, so if a defendant fails to make a sufficient showing of one, the other does not need to be addressed. *Id.*, ¶13. As with Stryker's Fourth Amendment claim, we uphold the circuit court's factual findings unless they are clearly erroneous. *State v. Reinwand*, 2019 WI 25, ¶18, 385 Wis. 2d 700, 924 N.W.2d 184 (citation omitted). Whether counsel's performance was deficient and

16

whether a defendant was prejudiced present questions of law that this court reviews independently. *Id.* (citation omitted).

¶38 To prove defective performance, the defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, ¶40 (citation omitted). The defendant "must point to specific acts or omissions by counsel that are 'outside the wide range of professionally competent assistance.'" *Jacobsen*, 352 Wis. 2d 409, ¶13 (quoting *Strickland*, 466 U.S. at 690). An attorney does not perform deficiently by failing to make a losing argument. *Id.*, ¶49.

¶39 In order to show that his trial counsel rendered ineffective assistance, Stryker must first establish that the Inventory document was in fact privileged under WIS. STAT. § 905.04. That statute states in relevant part that a patient "has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient … [and] the patient's social worker." Sec. 905.04(2). "The plain language of subsection (2) extends the … privilege to either 'communications made or information obtained or disseminated' during professional contacts." *Crawford ex rel. Goodyear v. Care Concepts, Inc.*, 2001 WI 45, ¶20, 243 Wis. 2d 119, 625 N.W.2d 876. The statute is strictly construed and Stryker had the burden of establishing that the Inventory document was protected by the privilege. *Id.*, ¶14; *Braverman v. Columbia Hosp., Inc.*, 2001 WI App 106, ¶13, 244 Wis. 2d 98, 629 N.W.2d 66.

¶40 We agree with the circuit court that Stryker failed to prove that the Inventory document was privileged under WIS. STAT. § 905.04(2). Neither

Stryker, the social worker, nor anyone else testified as to the circumstances surrounding the creation of the document, its purpose, or what steps were taken to preserve its confidentiality. The affidavit from the social worker suggests that a document was created as part of Stryker's treatment, but that is not sufficient, by itself, to establish that the document met all of the requirements for protection under § 905.04(2). Because the document was not shown to be privileged, Stryker's trial counsel was not ineffective in not moving to suppress it on that ground.[10]

## CONCLUSION

¶41 We affirm the district court's conclusion that the warrantless search of Stryker's laptop for child pornography was constitutionally permissible because AS provided valid consent for the search. AS's authority to permit the search extended to the Inventory document as she provided the password used to access it. We further agree that the circuit court correctly denied Stryker's claim of ineffective assistance because he failed to show that the Inventory document was protected by the social worker privilege in WIS. STAT. § 905.04(2).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[10] Stryker also appeals the circuit court's denial of his "Motion to Destroy Confidential Information" in which he sought an order "requiring destruction of all paper and electronic copies of his confidential information contained in the [Inventory document] upon the court's finding that [it] was a confidential communication between Mr. Stryker and his licensed clinical social worker pursuant to WIS. STAT. § 905.04(2)." Because we agree with the circuit court that Stryker did not carry his burden to prove that the statute applied to the document, the court did not err in denying Stryker's motion.